McCANN v. NEW YORK & Q. C. RY. CO.

(Supreme Court, Appellate Division, First Department.    April 7, 1898.)

STREET RAILROADS—COLLISION WITH CARRIAGE—EVIDENCE.

In an action brought to recover damages for the death of plaintiff's intestate through the alleged negligence of defendant's servants, it appeared that the intestate was driving a carriage in the same direction as one of defendant's trolley cars, and a passenger on the car testified on behalf of defendant that the carriage was at one side of the track, and not on it, until, when the car, was within 15 feet, the driver turned his horses onto the track. Two women, who were in the carriage, and did not see what happened, testified on behalf of plaintiff that the car struck the carriage on the back or side, but their description of the way they were thrown seemed to indicate that the carriage or the horses ran into the car. There was also evidence that it would have been impossible, after the horses turned, to stop the car before the accident. *Held*, on all the evidence, that the verdict in favor of plaintiff was against the weight of evidence.

Patterson and O'Brien, JJ., dissenting.

Appeal from trial term.

Action by Catherine McCann, as administratrix of Simon McCann, deceased, against the New York & Queens County Railway Company. From a judgment entered on a verdict, and from an order denying a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Eugene L. Bushe, for appellant.
M. P. O'Connor, for respondent.

INGRAHAM, J.  This verdict should have been set aside on the ground that it was against the weight of evidence.  There is no direct evidence that the defendant's car ran into the carriage at all. The evidence produced by the plaintiff to prove that fact was the testimony of two women who were in the carriage. . One of these women testified that the first that she knew of the accident was "the shock of the trolley car knocking into the carriage.  It came from towards the rear; and then we heard the sound of the car going alongside of the carriage for an instant; and then the horses took fright and ran.  I saw the trolley car.  The trolley car was going the same way the carriage was going.  And it came up from behind us.  It struck the right side of the carriage.  *  *  *  It seemed to hit the carriage first, and then it went along the wheel. We could feel the trolley."  The other woman in the carriage testified:  "I felt the shock of the car striking the carriage.  The car struck the carriage on the right wheel; the rear wheel.  It struck the carriage in the back.  The part of the carriage I say it struck was the rear; the rear part of the wheel.  Yes, the rear wheel. The right-hand rear wheel."  On the part of the defendant the only passenger in the car testified that he saw the carriage as the car approached, and that the carriage was on the side of the track, and not upon the track.  "When I was looking at this coach, it appeared to me to be far enough away from the tracks upon which

our car was running for our car to pass without collision. As we got towards the coach,—we possibly were about ten or fifteen feet behind the coach,—when he turned his horses. When the horses turned into the track, we were moving down, and the motorman rang his bell very violently." The witness testified that the coach was running "on a parallel line with the car until the car got within fifteen feet of the coach, and then the horses moved around to the right; whether of their own volition or the driver's I don't know. I saw the man fall off his coach. To the best of my opinion, he fell between the tracks, or, it might be, on the other side of the track. He fell about midway between the line of the car and the gutter." The witness further testified that it was impossible for the motorman to stop the car from the time that the plaintiff's intestate's horses turned to the time of the accident. This testimony was corroborated by the testimony of the motorman, who expressly swears that the horses turned upon the track in front of the car, and that the car struck the horses. Now, assuming that there was evidence to justify the denial of the motion for a nonsuit, we think, upon the whole case, the preponderance of evidence was so strongly in favor of the defendant that the verdict is against the weight of evidence. The only evidence that the car ran into the coach was the inference drawn from the testimony of the women in the coach, neither of whom saw the collision. If the horses did turn in front of the car, as testified to by the passenger, it is quite possible that the car did strike one of the wheels of the coach, and that that was the shock which the occupants of the coach felt. It is entirely consistent with the story as told by the persons in the coach, and it is sworn to by a disinterested witness, and corroborated by the motorman, without any fact appearing to discredit it. There is another consideration that seems to indicate that this carriage was not struck by the car from behind. The women in the carriage testify that the shock of the collision threw them on the front seat of the carriage. If the carriage had been struck from behind it would have been thrown forward, and the occupants against the back seat of the carriage. On the other hand if the carriage had been suddenly stopped by running into the car, or by the horses running into the car, those in the carriage would have been thrown forward just as the women testified that they were thrown.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

PATTERSON, J. (dissenting). The action was brought to recover damages for the death of the plaintiff's intestate, the result of injuries caused, as is alleged, by reason of the negligence of the defendant's servants. It appeared that the defendant owned and operated a line of railway in Long Island City, and that on the 30th of June, 1897, the plaintiff's intestate, Simon McCann, was driving a carriage on Borden avenue, near Bradley avenue, in that

city. There were three women riding in the carriage. It had started from Calvary Cemetery, continued along Bradley avenue, turned into Borden avenue, and had proceeded a distance of some 200 feet or more along Borden avenue; when it was overtaken by a trolley car of the defendant, which car struck either the carriage or one of the horses being driven by the plaintiff's intestate, who was thrown or fell from the box of the carriage, and who fractured his skull, from the effects of which he died some 12 days afterwards. The issue of fact primarily before the jury was as to the cause of the accident, the theory of the plaintiff being that it was brought about by the negligence of the motorman in charge of the car; the theory of the defendant being that it was either an unavoidable accident, or one attributable in some measure, if not altogether, to the negligence of the plaintiff's intestate. At the close of the plaintiff's proof, a motion was made to dismiss the complaint on the grounds that negligence on the part of the defendant's servant was not shown, and that there was nothing to show that the plaintiff's intestate was free from negligence himself. That motion was denied, and the question first arising in the case is whether there was evidence sufficient to go to the jury on both the points relied upon by the defendant in its motion for a nonsuit. It was established by sufficient testimony that the plaintiff's intestate was driving along Bradley avenue at a slow rate, and that by reason of the condition of that street he was compelled to drive in the track way of the defendant's road. He was so driving when he turned into Borden avenue. The important question of fact at this point of the case is, what were the position and the surroundings of the carriage on Borden avenue at the time the accident happened? The claim on the part of the plaintiff is that, after McCann turned from Bradley avenue into Borden avenue, he still partly kept within the line of the right-hand track going towards the Long Island Ferry of the defendant's road; and that when the accident occurred the wheels on the right side of the carriage were within the track on the right side of the defendant's road; that the carriage was struck by the defendant's car from behind, and that the plaintiff's intestate was thrown from the box by reason of the collision of the car with the body of the carriage, or the rear wheel of the carriage. The claim of the defendant is that no part of the carriage was within the rails of the right-hand track of the road, but that, on the contrary, the carriage was partly between the rails of the left-hand track and partly in the street between the two tracks, and that there was an intervening space of about 18 inches, sufficient to allow the car to pass without touching the carriage, had it not been for the imprudence of McCann, who, the defendant claims, instead of continuing in a direct course, drew his horses to the right (or they shied to the right), thus bringing them or the carriage in front of the moving car in such a way that it could not be stopped before the plaintiff's intestate fell; the further claim being made that the fall was not caused in any way by a collision with the carriage, but by the horses shying, or by the plaintiff's intestate losing his balance in making a sudden turn.

There was evidence to sustain the plaintiff's claim, and sufficient to go to the jury, both as to the cause of the accident and as to the deceased's conduct. There is no testimony on the part of the plaintiff of any eyewitness to the occurrence, but there are the statements of two of the women who were inside the carriage that its right wheels were within the right-hand track of the defendant's road. It was a warm day, and the windows of the carriage were open, and one of the witnesses swears positively to the situation of the carriage. The defendant's car was approaching from behind. It was in charge of the motorman, who must have distinctly seen the obstruction in front of him, if the carriage were there. The women inside the carriage swear that they did not hear the ringing of any bell; that the carriage was not going rapidly, but that it was struck violently from behind, so much so as to throw forward one of the women from the back seat of the carriage. There was, therefore, on the part of the plaintiff, proof to show that the plaintiff's intestate was driving a carriage on a public street in a place where he had a right to be; that while he was so driving his vehicle was struck from behind by a car in charge of the defendant's servant; that the violence of the shock was so great that it threw one of the occupants of the coach, who was sitting on the rear seat, from her position, and that neither of the persons in the carriage, although the windows were open, heard any signal of the approach of the car; and it was fair to presume, under those circumstances, that the violence of a blow which would throw the occupants of the interior of the carriage from their seats would be sufficient to throw the driver from the box; and from the circumstances detailed, in the absence of any other testimony, it is also a fair presumption that the driver of the carriage was proceeding along the track in the usual and ordinary way, it being impossible to say, under the circumstances of this case, as matter of law, that he was under any duty whatever to look behind him to guard against the danger of a trolley car running into his vehicle. The case discloses one of those situations in which it could not be said, as matter of law, that freedom from contributory negligence was not shown. Such freedom may be shown from circumstances, and it is only where they point as much to negligence as to its absence that a nonsuit is proper. Wiwirowski v. Railway Co., 124 N. Y. 420, 26 N. E. 1023. On the testimony of the plaintiff's witnesses, the accident is accounted for, and there is no circumstance in the situation which would authorize the court to take away from the jury the consideration of the whole case upon the question of any faultiness on the part of the intestate; and there was evidence from which the jury could infer negligence on the part of the defendant's servant. Striking violently this carriage from the rear, with the car under the control of a motorman, the carriage being within the track, and within the plain sight of the motorman, is a situation which justifies the inference that there could not have been the exercise of sufficient care on the part of the motorman in stopping the car to prevent the collision. This is, of course, taking the testimony on behalf of the plaintiff in its

most favorable light, and giving it its fullest probative force, which the trial judge was obliged to do; and there was no error in his refusal to dismiss the complaint.

The defendant's theory of the case was sustained by the motorman, who, being in the employ of the defendant, and thus interested, it was for the jury to judge of his credibility. The testimony of the conductor was manifestly false, whether corruptly or impulsively so we need not inquire. There was but one passenger in the car, and his testimony was very plain to the effect that the carriage was not within the line of the track at all, but that it was, when first observed by this witness, altogether outside of the right-hand track, and that the horses attached to the carriage either swerved or were pulled to the right side, and thus came upon the track; one of the horses, and not the carriage, being struck by the car before the motorman could arrest its speed. But the situation of the car and the carriage was a question for the jury. There was evidence that near the carriage, just immediately preceding the accident, was a heavy truck on the right, such truck being drawn by six or eight horses. There was testimony on the part of the plaintiff's witnesses that there was also a funeral train of carriages on the other side of the road. It seems that the only way for McCann to pass the eight-horse truck was on the tracks, or to the left of the tracks. The testimony of the motorman is contradictory, and it was for the jury to pass upon his credibility. In one place he distinctly swears that he had been slowing up the car from the time he first saw the carriage,—that is to say, a block off, —until he struck the horse, slowing up all the time. Then he stated that he did not slow up all the time, but that when he got nearer the carriage he did, and that when it was necessary for him to slow up, he did so. He swore positively that the car did not strike the wheel of the carriage, but that it struck one of the horses slightly. He then says in another place, "I only slowed up to the extent of one mile an hour from when I first saw the coach until the time I struck the wheel." Here was a direct contradiction in this testimony, which the jury doubtless considered. But on all this testimony it was clearly a question for the jury as to what was the position of the carriage with relation to the car, and whether the car struck the carriage, and, if it did, the plaintiff's theory was established; or whether it struck the horse, and, if it did so strike the horse, and not the carriage, then it would be a reasonable inference that the horses either shied onto the right-hand track or were pulled there by McCann, the plaintiff's intestate. We think, therefore, that there was evidence to go to the jury on both subjects of negligence and contributory negligence, and the charge of the judge with reference to those matters was correct.

It is contended that there was certain evidence in the case of declarations made by McCann while he was in the hospital as to the cause of the accident, and that such declarations exonerated the defendant's servant from blame. Williams, an employé of the defendant, testified that the plaintiff herself told him that her husband, when she saw him in the hospital, stated that his horses

became frightened at the truck, and shied, and that he was thrown from the carriage; and a physician, also in the employ of the company, went to the hospital, and there saw McCann, and McCann stated substantially the same thing to him. The plaintiff states that in her trouble and distress she did not remember what she said to this witness Williams. There is no contradiction of what the defendant's physician testified to; but these men were employés of the defendant, and it was for the jury to say whether they would believe them or not, and how much weight they would give to the report of statements of a man lying in a hospital with a fractured skull. They saw these witnesses, and had the opportunity of judging for themselves how much weight to attach to what they said, and we see no reason for interfering with their conclusion upon that subject.

Exception was taken to the refusal of the court to charge that there was no affirmative evidence of any care exercised by McCann, or any effort on his part to look for approaching cars. This request, in substance, was that the court should charge the jury that, as matter of law, the plaintiff's intestate was bound to look behind him for the possibility of cars running into him from the rear. The court did charge that there was no direct evidence, but that the jury would have to pass upon all the circumstances, and say whether they could find that the deceased exercised the requisite care. That was a proper direction to the jury. The court had charged expressly that if, by the exercise of reasonable care, McCann could have seen the approaching car, and ought to have apprehended the danger of the situation, he was chargeable with negligence, for he was not at liberty to take even doubtful chances from being too near the track, in the face of danger, and in reliance on the successful attempt of the motorman to slacken the speed of the car. That is as favorable an instruction as the defendant could have required. Nor was it error for the court to refuse to charge as matter of law that, if the jury found that McCann was driving upon the tracks in such a manner that the car behind him could not pass him without collision, and that McCann failed to look behind him occasionally for approaching cars, he was guilty of contributory negligence, and that the plaintiff could not recover. It was for the jury to say, under the circumstances of the case,—and so the court charged,—whether there was any negligence on the part of McCann. Was the situation such as to give rise to any duty to look behind? was the question. In one view of the testimony, it would have been negligence to have looked behind, for he had the funeral procession on one hand and the heavy truck with six or eight horses on the other hand; and according to the testimony of the motorman the truck, carriage, and car were in close proximity at the time of the accident, and the motorman began to ring his bell, as he says, for the truck, when he was something more than 50 feet away. The real point in the case was as to the situation of the carriage, and what would have been reasonable and careful driving in view of that situation; and upon the whole case, upon the facts, we do not think the verdict

of the jury should be disturbed, nor can we say that the damages were excessive.

The judgment and order appealed from should be affirmed, with costs.

O'BRIEN, J., concurs.