James H. Boomer, J.
The defendants are charged with criminal possession of a controlled substance in the fifth degree.
Armed with a search warrant, detectives arrested the defendants at the Monroe County airport. At the time of arrest the defendants had claimed from an airport freight office, and were in possession of, a suitcase, which when searched was found to contain a large quantity of marijuana. The defendants move to suppress this evidence, claiming that the search warrant was : improperly issued.
The search warrant, issued by a Judge of the City Court of Rochester, was based upon an affidavit of a police officer of the City of Rochester who swore that he received information from i police officer in Tucson, Arizona, that a suitcase had been delivered to the Tucson airport for delivery to the defendant Joseph Gilligan in Rochester, New York, by air freight; that a search warrant had been issued in Tucson and when this warrant was executed the Tucson police officer found that the suitcase contained marijuana; that the Tucson police officer knew it was marijuana since he had two years’ experience as a narcotics officer and was familiar with the appearance and odor of marijuana.
Defendants claim that the Rochester warrant was improperly issued because it was based upon information derived from an *425 illegal search and seizure in Tucson. Specifically, it is claimed that the Tucson search warrant was invalid because it: (a) was a general warrant; and (b) was issued without sufficient probable cause; and (c) was not legally executed.
(a) WAS THE TUCSON WARRANT A GENERAL WARRANT OR DID IT SUEEICIENTLY DESCRIBE THE ITEM TO BE SEARCHED1?
The Tucson search warrant recited that there was at the Emery air freight Office at the Tucson Airport a specifically described suitcase which was addressed to the defendant GHlligan, and which contained a large amount of marijuana. The warrant authorized the .search of “ the premises consisting of one story brick and steel frame building located at Emery Air Freight Office, Tucson International Airport * * * for the following property: An undetermined amount of marijuana.”
The defendants claim that the search warrant is too broad since it authorized the search of the entire Emery Air Freight premises for marijuana, thereby allowing the police officers in Tucson to open and search all of the packages and luggage in that premises. “ Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.” (United States v. Ventresca, 380 U. S. 102, 108.) As stated in People v. Johnson (49 Misc 2d 244, 245), “ The warrant * * * need not be read with all the precision of a pedantic grammarian.”
In the Johnson case (supra, p. 244), the warrant authorized the search of “ ‘ the premises located at 25 Trinity Place, Hewlett, County of Nassau, New York, occupied by Walter Johnson ’ It developed that 25 Trinity Place was an apartment house containing 25 apartments. It was held that the warrant did not authorize the search of all 25 apartments, but only the apartment occupied by Walter Johnson.
In People v. De Lago (16 N Y 2d 289, 290), the warrant commanded the search 'of “ ‘ the structure, located at premises 2 and 3 Abendroth Place, Port Chester, New York, believed to be the framed [sic] dwelling occupied by one Anthony De Lago ’ ’ The caption of the warrant, however, described the place to be searched as “ The first floor apartment at 2 Abendroth Place, Port Chester” (pp. 290-291). This apartment was the one occupied by Anthony De Lago. The court held that the general description in the body of the warrant describing the premises *426 to be searched was limited by the specific description in the caption.
To paraphrase Chief Judge Desmond in People v. Martell (16 N Y 2d 245, 247): to get the sense out of a warrant one must read the whole of it. Here, reading the whole of the warrant, it is apparent that the sense of it is that only the particularly described suitcase addressed to the defendant Grilligan was to be opened and searched. Read in this sense, the warrant is not invalid as being general. (See, also, People v. Mongmo, 67 Misc 2d 815.)
(b) WAS THEBE PBOBABLE CAUSE FOB THE ISSUANCE OF THE TUCSON WABBANT?
The affidavit supporting the application for the Tucson warrant recited that the affiant, Officer Morgan, had probable cause to believe that the particular described suitcase addressed to the defendant Grilligan was in the possession of the Emery Air Freight Office at the Tucson Airport and that the suitcase contained a large quantity of marijuana; that the affiant had two years’ experience in narcotics investigations and had investigated hundreds of marijuana cases and could identify marijuana by sight and smell; that he received information from a confidential informant that a brown suitcase at the Emery Air Freight Office possibly contained marijuana; that as a result he went to the Air Freight Office and asked to see the suitcase in question and he noticed a smell emitting from it; that he had smelled the same smell from other containers which have proved to contain marijuana.
Where probable cause is founded solely upon information supplied by a confidential informer, the affidavit should contain: (1) facts showing the informer is reliable; and (2) the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were (Aguilar v. Texas, 378 U. S. 108). Here, however, the probable cause was not based solely upon the tip supplied by an informer, but also upon the independent observations of the affiant police officer (People v. Munger, 24 N Y 2d 445, 452).
Information furnished by a police officer that he smelled the odor of marijuana emitting from a package or suitcase provides sufficient probable cause for the issuance of a search warrant (People v. Reisman, 29 N Y 2d 278; United States v. Pond, 382 F. Supp. 556).
The defendants claim they have a right to a hearing to determine the truthfulness of the statements in the Tucson affidavit. *427 Recognizing a split of authority in the various jurisdictions, the Court of Appeals established the rule in New York that inquiry will be permitted to determine whether the affidavit’s statements are perjurious (People v. Alfinito, 16 N Y 2d 181).
In Alfinito (supra, p. 186), the court held that “ section 813-c of the Code of Criminal Procedure is to be construed so as to permit an inquiry as to whether the affidavit’s statements were perjurious ”.
The provisions of the new Criminal Procedure Law governing procedure on a motion to suppress (CPL 710.60) provide for a hearing where the motion is not summarily granted or summarily denied. A motion to' suppress may be summarily denied where: (a) the motion papers do not allege a ground constituting legal basis for the motion; or “ (b) The sworn allegations of fact do not as a matter of law support the ground alleged.” (CPL 710.60, subd. 3, par. [b].) This section does not change the rule in People v. Alfinito (supra) that a defendant may inquire into the truthfulness of the statement in the affidavit supporting a search warrant.
In order to obtain a hearing to contest the truthfulness of the affidavit, however, the defendants must, by factual allegations in their moving affidavits, raise the issue of perjury. A hearing was denied in People v. Rodger (28 App. Div. 625, 626) since there was no allegation of perjury.
When a defendant attacks the credibility, not of the officer who signs the affidavit, but of the informant upon whom the officer relies, a hearing will not be granted (People v. Solimine, 18 N Y 2d 477). In Solimine (supra, p. 480), the court wrote that the defendant’s moving affidavit “ is barren of any fact which raises an issue respecting perjury. To warrant the relief requested, Solimine must throw doubt upon the truthfulness of the affiant’s allegations. This he has failed to do.”
“ In order to require a hearing, the defendant must show some facts which put in issue and controvert the grounds which prompted the court in issuing the search warrant. No such facts are set forth in the moving papers.” (People v. Rooks, 35 Misc 2d 598, 600; quoted in People v. Hoey, 54 Misc 2d 1083, 1084.)
Here, the only affidavits in support of the motion to suppress are made by the attorneys for the defendants. No facts are set forth, but only the belief of defendants’ attorneys that the statement of the Tucson officer that he smelled the odor of marijuana was incredible, especially since the marijuana was enclosed in plastic. Perhaps if the Rochester warrant were *428 based upon the affidavit of the Rochester police officer that he smelled the odor of marijuana coming from the suitcase, a hearing would ibe in order to determine whether the affiant’s statements were perjurious. But the defendants are not attacking the statement in the affidavit supporting the Rochester warrant. They seek to inquire into the truthfulness of the statements in the Tucson affidavit supporting the Tucson warrant. An extension of the rule in Alfinito (16 N Y 2d 181, supra) to permit inquiry by our courts into the truthfulness of affidavits supporting search warrants issued in other States would be unduly burdensome. It would require the District Attorneys of our State to produce in court law enforcement agents of other States no matter how distant. While law enforcement officers of our State are usually readily available to testify at suppression hearings, we cannot expect law enforcement officers of other States to be readily available to appear at 'suppression hearings in our State upon the unsupported allegations 'that they have falsified their affidavits. They have work to do at home and if these out-of-'State officers refuse to appear in New York courts, they cannot be compelled to come.
It seems to me that the only practical rule to adopt where a motion to suppress is based upon a New York search warrant, valid on its face, and founded upon facts obtained as the result of an out-of-State search warrant, also valid on its face, is that the defendants may controvert the truthfulness of the New York affidavit, but not of the out-of-State affidavit. If I am wrong in this, then I hold that the truthfulness of the out-of-State affidavit may only be attacked where there are compelling evidentiary facts set forth in the moving affidavit raising a substantial issue of perjury.
I hold that it takes more than the attorneys ’ affidavits in this case to compel the prosecution to produce the Tucson policeman for cross-examination into the truthfulness of the statements in his affidavit supporting the Tucson 'search warrant.
(c) MUST THE EVIDENCE BE SUPPRESSED BECAUSE THE TUCSON OFFICER DID NOT SEIZE THE PROPERTY, RETURN IT BEFORE A TUCSON MAGISTRATE AND RETAIN IT?
The Arizona statute requires that the officer who executes the warrant return the property to the issuing Magistrate and then retain the property in police custody. Failure to make a timely return does not, however, invalidate the warrant (State v. Tillery, 107 Ariz. 34, cert. den. 404 U. S. 847; State v. Sherrick, 98 Ariz. 46).
*429 The motions to suppress are denied.
The motion to dismiss the indictments on the ground that there was insufficient evidence presented to the Grand Jury are denied. I have read the minutes and I do not find the evidence "nsufficient.