COMMONWEALTH vs. DANA A. WEEKS.

Bristol. January 13, 1982. — February 11, 1982.

Present: GRANT, GREANEY, & SMITH, JJ.

*Search and Seizure*, Warrant. *Constitutional Law*, Search and seizure. *Narcotic Drugs.*

Wooden figureheads searched by the police for controlled substances were "places" within the meaning of G. L. c. 276, §§ 1 and 2, and both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. [197-198]

A warrant for the search of "wooden sculptures depicting figureheads . . . shipped from Montego Bay, in the name of [the defendant] . . . and being in the possession of [the defendant and a companion]," which failed to specify a place where the figureheads would be found was valid. [198-199]

In the circumstances, a defendant's argument that controlled substances seized by police pursuant to a search warrant should have been suppressed because the affidavit of one of the police officers contained "intentional or, at the very least, reckless" misrepresentations was without merit. [199]

An anticipatory search warrant issued at a time when the controlled substances for which the search was to be made were not located in, or actively moving in the direction of, Massachusetts when the warrant issued was valid under G. L. c. 276, § 1. [199-200]

Evidence at a defendant's trial on indictments charging him under G. L. c. 94C, §§ 31 and 32, with possession of controlled substances with intent to distribute was sufficient to warrant a finding that he knowingly possessed the drugs. [200-201]

INDICTMENTS found and returned in the Superior Court Department on February 12, 1979.

Motions to suppress were heard by *Taveira*, J., and the cases were heard by *Prince*, J.

*John A. Tierney* for the defendant.

*Lance J. Garth*, Assistant District Attorney, for the Commonwealth.

GRANT, J.   The defendant has appealed from his convictions by a Superior Court judge, sitting without jury, on indictments charging him with possession of Class C (tetrahydrocannabinols[1]) and Class D (marihuana) controlled substances with intent to distribute the same.  G. L. c. 94C, §§ 31, 32.  He argues (1) that the search warrant under which the drugs were seized was invalid and (2) that the evidence at trial was insufficient to warrant a finding that he knowingly possessed either drug.

1.  The warrant was issued by a judge of the New Bedford District Court on January 10, 1979, and commanded a search of "certain hand carved wooden sculptures depicting figureheads and being dark wooden stain in color and being shipped from Montego Bay, in the name of Dana A. Weeks and being in the possession of said Dana A. Weeks and one Andrew Brennan."[2]  The figureheads were to be searched for "controlled substances to wit:  cocaine Class 'B', and including all implements and paraphernalia used in the acquisition, transportation and sale of said controlled substance."  The warrant was issued on the basis of an affidavit of Trooper Robert St. Jean of the Massachusetts State police in which he recited facts sufficient to warrant findings of probable cause to believe that the defendant and Brennan were keeping and selling cocaine in the New Bedford area; that both men were receiving shipments of cocaine from Jamaica which were concealed inside wooden figureheads; that there were two wooden crates containing such figureheads with cocaine inside them which were then located at the Eastern Airlines freight terminal at the Theodore Francis Greene Airport in Warwick, Rhode Island; that the defendant and Brennan were planning to pick the crates up at the airport "on or about" that day; and that both men would then transport the "figureheads containing cocaine . . . to an

---

[1] More commonly known as "liquid hash" or "hash oil."

[2] Brennan was indicted for the same offences as and was tried with the defendant but was acquitted on both indictments when the trial judge allowed his motion under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979).

unknown location in the Greater New Bedford, Mass. area."[3]

There was undisputed evidence at the pretrial hearing on the defendant's motion to suppress the contents of the figureheads from which the motion judge could have found the following facts. Two days after the issuance of the warrant the defendant and Brennan drove to the Eastern Airlines freight terminal in Warwick in a pickup truck with an open bed which was owned by and registered to the defendant. The defendant receipted for the contents of two wooden crates which had been addressed and shipped to him from Montego Bay. The crates were placed in the open bed of the truck, and the two men left the airport and headed for Massachusetts, with Brennan driving the truck and the defendant seated beside him.

Unbeknownst to either man, there were undercover officers of the Massachusetts State police who observed the men pick up the crates at the airport and who (with the assistance of an officer in a State police helicopter) followed the truck into Massachusetts. Trooper St. Jean and other officers stopped the truck on a public highway in Westport.[4] St. Jean advised the defendant of his identity as a State police officer (Brennan already knew who St. Jean was) and of his possession of the search warrant, gave both men the Miranda warnings, and proceeded to the rear of the truck, where he found the two crates lying in the open on the bed of the truck. The crates were constructed of wooden slats spaced several inches apart. The newspapers which had been used as a packing material inside the crates had been ripped or torn to the extent that (as the motion judge found) carved wooden figureheads such as those described in the warrant were in "plain view on the back end of [the] truck." The defendant was given the choice of driving the truck with St. Jean to the State police barracks in North

---

[3] There is no contention that the affidavit failed to establish probable cause to believe the facts recited or predicted by St. Jean.

[4] The propriety of the stop has not been challenged.

Dartmouth or having it towed to the barracks. He chose the former, and Brennan was driven to the barracks in a cruiser. Upon their arrival there, St. Jean pried the crates apart,[5] broke the figureheads open, and discovered substantial quantities of liquid hash and marihuana.[6] He then placed both men under formal arrest.

The defendant has abandoned his earlier objection to the anticipatory nature of the warrant, undoubtedly because of the recent decision (rendered while this case was on appeal) in *Commonwealth* v. *Soares*, 384 Mass. 149, 153-155 (1981). He continues to cling to other points.

(a) He contends first that the warrant failed to disclose a "place" where the search was to be conducted, as required by G. L. c. 276, §§ 1 and 2 (as appearing in St. 1964, c. 557, §§ 1 and 2, respectively), by the Fourth Amendment to the United States Constitution and by art. 14 of the Massachusetts Declaration of Rights. See *Commonwealth* v. *Pope*, 354 Mass. 625, 628, 629 (1968); *Commonwealth* v. *Rugaber*, 369 Mass. 765, 767 (1976). This contention rests on nothing firmer than a failure to grasp the import of the carefully chosen language of the warrant, which commanded a search of the "hand carved wooden sculptures depicting figureheads . . . in the possession of" the defendant and Brennan. It is settled that the word "place" as used in the statute is to be given a broad construction (*Commonwealth* v. *Fancy*, 349 Mass. 196, 203 [1965]), and the clear implication of the decision in *Commonwealth* v. *Benoit*, 382 Mass. 210, 213-214, 219-220 (1981), is that a container such as a suitcase is a "place" within the meaning of the statute and the relevant constitutional provisions.

---

[5] As the figureheads had been found in plain view, there is no merit to the suggestion that an additional warrant should have been obtained before the crates were opened. See *Arkansas* v. *Sanders*, 442 U.S. 753, 764-765 & n.13 (1979); *Robbins* v. *California*, 453 U.S. 420, 423 (1981).

[6] No question has been raised that no cocaine was found, such as had been anticipated by the warrant and the application therefor. See *Commonwealth* v. *Wojcik*, 358 Mass. 623, 628 (1971); *Commonwealth* v. *Pellier*, 362 Mass. 621, 625 (1972).

A like conclusion has been reached in an unbroken line of cases decided by other courts under the Fourth Amendment. See, e.g., *United States* v. *Chadwick*, 433 U.S. 1, 4, 15-16 (1977) (footlocker); *Arkansas* v. *Sanders*, 442 U.S. 753, 755, 763-766 (1979) (suitcase); *United States* v. *Honore*, 450 F.2d 31, 33 (9th Cir. 1971), cert. denied, 404 U.S. 1048 (1972) (warrant to search "containers where the above-listed property are located"); *United States* v. *Muckenthaler*, 584 F.2d 240, 245-246 (8th Cir. 1978) (warrant to search "those persons or baggage 'being met' by Struble at the airport"); *United States* v. *Viegas*, 639 F.2d 42, 45 (1st Cir.), cert. denied, 451 U.S. 970 (1981) (warrant to search luggage); *United States* v. *West*, 651 F.2d 71, 72 (1st Cir. 1981) (same); *State* v. *Carroll*, 111 Ariz. 216, 217 (1974) (same); *State* v. *1969 Volkswagen Bus*, 120 Ariz. 365, 367 (Ct. App. 1978) (warrant to search "premises consisting of a package addressed to Larry Brown"); *People* v. *Gilligan*, 80 Misc. 2d 423, 425 (N.Y. Sup. Ct. 1975) (warrant to search suitcase addressed to defendant). There is no logical basis for distinguishing the figureheads in this case from the various types of containers considered in those cases. We hold that the figureheads were "places" within the meaning of G. L. c. 276, §§ 1 and 2, and both the constitutional provisions relied on by the defendant.

(b) The defendant complains next that the warrant failed to specify a place where the figureheads would be found. This complaint consists of little more than a practical recognition of the fact that the police could not know, and were in no position to control, the time or place of delivery of the objects to be searched, as they were in such cases as *Commonwealth* v. *Aguiar*, 370 Mass. 490, 491-492 (1976), and *Commonwealth* v. *Soares*, 384 Mass. at 151-152. The only consequences we see of the absence of any specification of a place where the figureheads would be found were that the police would have to (i) find them in the possession of the defendant and Brennan and (ii) execute the warrant (iii) in

some place where neither person would have a reasonable expectation of privacy. Those requirements were met.[7]

(c) The defendant argues that the drugs should have been suppressed because the St. Jean affidavit contained two misrepresentations which were "intentional or, at the very least, reckless." See *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 771 (1981). He points first (i) to some of the testimony of St. Jean at the suppression hearing which suggested that he may not have had any knowledge of whether the defendant and Brennan had been keeping or selling cocaine and (ii) to the aforementioned assertion in the affidavit to the effect that both men were believed to have done so. This argument is based on the erroneous equation of actual knowledge of a fact with probable cause to believe something to be a fact, which is the standard required for the issuance of a search warrant. *Commonwealth* v. *Stewart*, 358 Mass. 747, 749 (1971). *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979). The defendant points next (iii) to St. Jean's testimony that the figureheads were not in the physical possession of the defendant or Brennan when he applied for the warrant and (iv) to the printed language "and may be found in the possession of (name one or more persons)" which appears in the third paragraph of the affidavit. See G. L. c. 276, § 2B(3), as appearing in St. 1964, c. 557, § 3. This argument is frivolous. The typed portions of the immediately preceding paragraph of the affidavit were explicit as to the whereabouts of the figureheads and the fact that they were not in the possession of either man when the warrant was applied for, and there is no possibility that the judge who issued the warrant was misled.

(d) The final argument on this branch of the case is that the drugs should have been suppressed because the articles for which search was to be made were not located in or ac-

---

[7] The police would also have to execute the warrant within the seven-day period set out in G. L. c. 276, § 3A, as appearing in St. 1964, c. 557, § 5. *Commonwealth* v. *Cromer*, 365 Mass. 519, 520-522, 524-526 (1974). That requirement was also met.

tively moving in the direction of the Commonwealth when the warrant issued. This argument is purely statutory, that the first paragraph of G. L. c. 276, § 1, requires that the issuing magistrate be satisfied that there is probable cause to believe that "the property or articles . . . *are* concealed . . . *within* the commonwealth" (emphasis supplied). It is urged that the use of the present tense "are" in conjunction with the word "within" precludes the issuance of an anticipatory warrant while the articles in question are lying motionless outside the Commonwealth, and we are reminded that the warrant in the *Soares* case did not issue until after the metamphetamine had arrived in the Commonwealth. 384 Mass. at 151-152. The argument overlooks the statement in the *Soares* case that "we read G. L. c. 276, §1, to permit search warrants to issue on a showing that concealment or possession is probable at the time a warrant is to be executed, and not solely at the time of its issuance." 384 Mass. at 155. The argument also overlooks the concluding paragraph of § 1, which provides that "[n]othing in this section shall be construed to abrogate, impair, or limit powers of search and seizure . . . under the common law." See *Commonwealth* v. *Murray*, 359 Mass. 541, 547 (1971); *Commonwealth* v. *Soares, supra.* Other courts have not hesitated to uphold anticipatory warrants issued in circumstances not dissimilar to those of this case (see, e.g., *United States* v. *Muckenthaler*, 584 F.2d at 243, 245-246; *State* v. *Cox*, 110 Ariz. 603, 607, 608 [1974]), and we are not disposed to adopt a rule which would frustrate the "goal of encouraging the use of warrants" (*Commonwealth* v. *Soares*, 384 Mass. at 154) or unnecessarily hamstring enforcement of the Controlled Substances Act.

2. The case was tried to a different judge. At the close of the Commonwealth's case the defendant presented a motion under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), which questioned the sufficiency of the evidence to warrant a finding that he had knowingly possessed either drug. See *Commonwealth* v. *Aguiar*, 370 Mass. at 498. There was evidence that the crates containing the figureheads had been ad-

dressed and shipped to the defendant in his name and that
he had receipted for the contents of the crates. In the
course of a conversation which he had with Trooper St. Jean
during the drive to the barracks, the defendant admitted
that the figureheads were his, admitted that he had import-
ed other figureheads on prior occasions, and made a state-
ment which the judge could have found was designed to
throw St. Jean off the scent.[8]  Prior imports were corrobor-
ated by a United States customs officer. There was evi-
dence that the liquid hash (fourteen grams of it) had a street
value of approximately $800 and that the marihuana (106
pounds of it) had a street value of approximately $53,000.
See and compare *Commonwealth* v. *Aguiar*, 370 Mass. at
500-502, and cases cited. We see no question as to the suffi-
ciency of the evidence to warrant a rational trier of fact in
concluding beyond a reasonable doubt (*Commonwealth* v.
*Latimore*, 378 Mass. 671, 677-678 [1979]) that the defend-
ant had knowingly possessed both drugs.

*Judgments affirmed.*

---

[8] On the record, this conversation occurred after the defendant had
been given the Miranda warnings. There was no motion to suppress the
conversation, and it was admitted without objection.