COMMONWEALTH *vs.* GEORGE AGUIAR.

Bristol.    March 1, 1976. — June 14, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Controlled Substance.    Search and Seizure.    Constitutional Law,* Search and seizure.    *Practice, Criminal,* Directed verdict.

A package mailed from a foreign country to the United States was subject to a search without probable cause by a customs inspector. [494-496]
At the trial of an indictment charging possession of cocaine with intent to distribute, there was no error in the denial of a motion to suppress a package containing cocaine where evidence that the defendant offered the package to a policeman, claiming that after reading a letter found in the package he had realized that it was not meant for him, warranted a finding that the defendant voluntarily consented to the search of the package. [496-497]
At the trial of an indictment charging possession of cocaine with intent to distribute, evidence that a defendant, named Aguiar, accepted delivery of a package addressed to "Dick Roper, c/o Agar," at the defendant's address and containing cocaine worth thousands of dollars, that he opened the package and read an enclosed note, that he put the package in a closet before leaving his apartment, and that, after being stopped by the police, he brought up the subject of the package even though it had not been mentioned by the officer warranted an inference that the defendant knew the package contained cocaine. [498-502]

INDICTMENT found and returned in the Superior Court on June 12, 1974.

A pre-trial motion to suppress evidence was heard by *Morse,* J., and the case was tried before *Taviera,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Daniel F. Featherston, Jr.*, for the defendant.
*John D. Sheehan,* Assistant District Attorney, for the Commonwealth.

WILKINS, J.   The defendant appeals under G. L. c. 278, §§ 33A-33G, following his conviction of knowing or intentional possession of cocaine with intent to distribute.[1] He contends that his motion to suppress a package containing cocaine should have been allowed. He challenges both the search of the package in incoming foreign mail, as a result of which the cocaine was discovered by customs officials, and the seizure of the package after its delivery to his New Bedford apartment. He also argues that his motion for a directed verdict at the close of the Commonwealth's case should have been allowed because the evidence did not warrant a finding that he knew the package contained cocaine. There was no error.

In April, 1974, during a routine examination of incoming mail in Miami, Florida, a Federal customs inspector, who was acting on the basis of intuition, opened a package mailed in Bogota, Colombia, and addressed to Dick Roper, c/o Agar, 156 Chestnut Street, New Bedford, Massachusetts. The customs declaration on the outside of the package identified the contents as two wine flasks. The description was accurate, as far as it went. The package contained two hooves and lower legs of an animal, made to hold two wine flasks, and an envelope which the inspector did not open. Out of curiosity, because the weight seemed "a little bit heavy," the customs agent opened the flasks and discovered inside each a plastic bag holding a white powder. A field analysis disclosed that the powder was probably cocaine.

The package was repacked and sent to Boston, and Federal agents in Boston were notified. When it arrived in Boston, a search warrant was obtained; the powder was "laboratory tested"; and some of the powder, determined

---

[1] Execution of his sentence to the Massachusetts Correctional Institution at Walpole for a term of four to six years has been stayed pending this appeal.

to be cocaine, was replaced with a harmless white substance. The Federal agents learned that no one named Dick Roper or Agar lived at 156 Chestnut Street, New Bedford, but that one George Aguiar, the defendant, lived in an apartment at that address.

The Federal agents decided to make a "controlled delivery" of the package, an apparently routine delivery with government agents standing by to take appropriate action. They arranged for the assistance of State and local police.[2]

On April 30, 1974, the Federal agents, of whom two were from the Drug Enforcement Division and one was a postal inspector, brought the package to New Bedford. They met two local police officers and gave the package to the regular postal route carrier, Coholan. Then the local police officers, the Federal agents, and two State police officers assumed positions of surveillance near 156 Chestnut Street.

Coholan took the package to the front door at 156 Chestnut Street and rang the defendant's bell. No one responded at first, but, after some delay, the defendant appeared at an upstairs window. Coholan said that he had a package addressed to Roper in care of Agar. The defendant came down to the door. At trial, Coholan believed that he said to the defendant that he assumed "they" had misspelled the defendant's name. He informed the defendant that it was a registered package which required a signature. The defendant accepted the package, signing both "Dick Roper" and his own name.

About twenty or thirty minutes later, the defendant came out of his apartment, entered a motor vehicle parked

---

[2] The recitation of facts to this point is based on a stipulation made at the defendant's trial. The testimony at the hearing on the defendant's motion to suppress was substantially the same. The balance of the facts set forth in this opinion come from the judge's findings of fact on the defendant's motion to suppress and from the evidence most favorable to the Commonwealth which was introduced prior to the close of the Commonwealth's case (and the presentation of the defendant's motion for a directed verdict). There are no significant differences between the facts found by the judge and the trial evidence most favorable to the Commonwealth.

behind 156 Chestnut Street, and drove off.[3] A New Bedford police sergeant, Turcotte, who had been on surveillance, followed the defendant. Several blocks away, Turcotte stopped the defendant, advised him of his Miranda rights, and said that he had probable cause to believe that the defendant had a controlled substance in his possession. However, no narcotics were found in the motor vehicle or on the defendant. Another New Bedford police officer arrived, and they informed the defendant that there were police officers at his house. He then voluntarily returned to his apartment accompanied by the newly arrived police officer.

When the defendant arrived back outside 156 Chestnut Street, he immediately said to Sergeant Turcotte, in the presence of a State police officer, Lowney, "Hey, Turcotte, if it's about the package, I will give it to you." Sergeant Turcotte replied that he did not want it; but Lowney said he did. The defendant led Lowney into the apartment. The defendant went to a closet, picked up the package, and gave it to Lowney.

One of the Federal agents, who was also present, testified that the package was still tied but one corner was open. On questioning, after being advised of his rights, the defendant denied that he knew anyone named Dick Roper, anyone with the name of the purported sender, anyone else in Bogota, Colombia, or anybody in South America. The defendant said that the corner of the package was open and that he had looked inside and read the letter. He stated that, after reading the letter, he realized that the package contained a gift and that it was not for him.[4]

---

[3] One of the Federal agents had left to obtain a search warrant for the defendant's apartment after seeing that the package had been delivered. He abandoned the attempt, however, when he learned by radio that the defendant had left his apartment.

[4] The handwritten letter read: "Dick — How the hell are you? Majorie & I enjoyed your last letter very much. Hope you get the 'A's' you expect come May. Meantime here are a couple of tipical [*sic*] Colombian wine skins for thoes [*sic*] year end celebrations Love 'Uncle' Wally."

A State police officer assigned to the narcotics section testified that the six ounces of powder in the plastic bags was sixty-four per cent cocaine, having a "street" or retail value in New Bedford at that time of $57,600.

The judge denied the motion to suppress the package and its contents. He questioned the defendant's standing to object to the customs search. He agreed with the defendant that there were no exigent circumstances justifying an immediate, warrantless search of the defendant's apartment. He recognized that one must be very suspicious of consent given by a person in custody and noted that the defendant was not advised that his consent to a search could be withheld. However, he concluded that the circumstances did not involve consent to search but rather, even on the defendant's testimony, a voluntary surrendering of the package, spontaneously offered by the defendant when he returned to 156 Chestnut Street. "His conduct [was] more consistent with that of a person seeking to establish his innocence and offering to give to the authorities a package that he had already concluded was not his and should be returned to the post office." He did not find, as the defendant asserts, that the defendant did not know that the package contained narcotics.

1. The defendant argues first that the customs search of the package in Miami was unlawful and, relying on *Wong Sun* v. *United States,* 371 U.S. 471 (1963), that all subsequent events relating to the package were so tainted by that illegality that his motion to suppress the package and its contents should have been allowed.

We pass over, without decision, the question whether the defendant, as an addressee of a package opened by a customs official in Miami and as one who disavows any interest in the package, has any standing to assert that the search violated his rights. See *Brown* v. *United States,* 411 U.S. 223, 228-229 (1973). See also *Commonwealth* v. *Sandler,* 368 Mass. 729, 733-734 (1975); *Commonwealth* v. *Campbell,* 352 Mass. 387, 401 (1967); *Commonwealth* v. *Mayer,* 349 Mass. 253, 255 (1965), cert. denied, 385 U.S. 853 (1966).

Mail coming into the United States is generally subject to search without any necessity for probable cause to conduct the search. The constitutional right to be secure from unlawful searches and seizures, as it applies to domestic mail (*United States* v. *Van Leeuwen,* 397 U.S. 249, 251 [1970], citing *Ex parte Jackson,* 96 U.S. 727 [1878]), does not apply to the search of incoming foreign mail in these circumstances. *United States* v. *King,* 517 F.2d 350, 352-353 (5th Cir. 1975). *United States* v. *Odland,* 502 F.2d 148, (7th Cir. 1974). *United States* v. *Beckley,* 335 F.2d 86, 88-89 (6th Cir. 1964), cert. denied sub nom. *Stone* v. *United States,* 380 U.S. 922 (1965). At least at the point of entry, constitutional restrictions on the search of incoming foreign mail are no greater than the restrictions on a border search of an arriving international traveler. *United States* v. *Doe,* 472 F.2d 982, 984 (2d Cir.), cert. denied sub nom. *Rodriquez* v. *United States,* 411 U.S. 969 (1973). *United States* v. *Beckley, supra* at 89. *United States* v. *Carpenter,* 403 F. Supp. 361, 363 (D. Mass. 1975). Cf. *United States* v. *Stornini,* 443 F.2d 833, 835 (1st Cir.), cert. denied, 404 U.S. 861 (1971) (border search of a person's clothing); *United States* v. *Feldman,* 366 F. Supp. 356, 361-362 (D. Hawaii 1973).

A package may be opened properly by a customs inspector on the basis of mere speculation without running afoul of any statutory restriction on the right to open such a package.[5] *United States* v. *King, supra* at 352. *United States* v. *Doe, supra* at 984-985. *United States* v. *Beckley, supra,* at 88. If any postal regulation was violated by the government, a point not established on the record, such a violation does not support the conclusion that the evidence seized in the inspection must be suppressed. *United States* v. *Beckley, supra* at 90. *United States* v. *Feldman, supra*

---

[5] Here the package was opened on conjecture in the regular course of the inspection of incoming foreign mail. The flasks themselves were not opened on mere conjecture. The customs agent did so out of curiosity when they seemed "a little bit heavy." See *United States* v. *Arbelaez,* 368 F. Supp. 605, 606 (D. Conn. 1974) (package mailed from Colombia opened because of how it felt).

at 362. *United States* v. *Sohnen,* 298 F. Supp. 51, 55-56 (E.D.N.Y. 1969). The regulations referred to by the defendant which may have been violated do not concern the propriety of searches of incoming foreign mail but rather concern action which must be taken after articles are seized or a sample of the contents of a package is taken.

2. The defendant argues next that the package and its contents should have been suppressed because he did not consent freely and voluntarily to the "search and seizure" of the package at his apartment. The judge declined to find that the defendant turned over the package involuntarily or as a result of coercion.

The question whether consent was voluntary is a question of fact to be determined in the circumstances of each case, with the burden of proof on the government. *Commonwealth* v. *Mendes,* 361 Mass. 507, 512-513 (1972). *United States* v. *Horton,* 488 F.2d 374, 380 (5th Cir. 1973), cert. denied, 416 U.S. 993 (1974), and cases cited. There was ample evidence to support the judge's finding of voluntariness. The defendant was the first to mention the package when he returned to his apartment. He offered to give the package to a New Bedford policeman and then entered his apartment, picked up the package, and handed it to a State policeman.

If an item is surrendered voluntarily, arguably a "search" or "seizure" within the purview of the Fourth Amendment to the United States Constitution is not involved. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 484-490 (1971). See *United States* v. *Ellis,* 461 F.2d 962, 968 n.6 (2d Cir.), cert. denied, 409 U.S. 866 (1972); *Wood* v. *Hodnett,* 377 F. Supp. 740, 741 (W.D. Va. 1974); *United States* v. *Wilmoth,* 325 F. Supp. 1397, 1400 (D. Mass. 1971); *United States* v. *Strough,* 311 F. Supp. 1088, 1093 (E.D. Tenn. 1970). Even if a search and seizure is involved here, consent vitiating the need for a search warrant may be found in cooperative conduct. *Commonwealth* v. *Causey,* 356 Mass. 125, 130 (1969). *Commonwealth* v. *Campbell,* 352 Mass. 387, 401 (1967). See *Grillo* v. *United States,* 336 F.2d 211, 213 (1st Cir. 1964), cert. denied sub nom. *Gorin*

v. *United States,* 379 U.S. 971 (1965); *United States* v. *Dupont,* 169 F. Supp. 572, 574 (D. Mass. 1959). The fact that a defendant was under arrest suggests that any consent was not voluntary, but that fact is not decisive and may be overridden by other circumstances (*United States* v. *Jones,* 475 F.2d 723, 728-731 [5th Cir.], cert denied, 414 U.S. 841 [1973]), such as the defendant's active assistance. See Annot., 9 A.L.R.3d 858, 883-884 (1966). The defendant need not be advised of his right to insist on a warrant for his consent to be voluntary. *Commonwealth* v. *LaBriola, ante,* 366, 367 (1976). *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 232-233 (1973).

The judge's determination that the defendant, who had received Miranda warnings, consented voluntarily and freely to the transfer of possession of the package and its contents was warranted by the evidence. The defendant's spontaneous offer of the package presents a different factual context from that appearing in *Judd* v. *United States,* 190 F.2d 649 (D.C. Cir. 1951), and in *Channel* v. *United States,* 285 F.2d 217 (9th Cir. 1960), relied on by the defendant, where permission was allegedly obtained only after the defendant had been in police custody and subject to questioning for more than a brief period of time. The judge's conclusion is not based on a finding that the defendant surrendered the package not knowing that it contained a controlled substance. The judge made no determination and was not required to make a determination whether the defendant knew the nature of the contents of the flasks when he handed the package to a police officer. The defendant's actions could have been prompted by a desire to persuade the police that he was unaware of the contents of the package, even though he knew of the presence of the cocaine.[6]

---

[6] The defendant has argued that his consent to the "search and seizure" could have been found to be voluntary only because he did not know he was turning over incriminating evidence and that such a finding is incompatible with the jury's finding that the defendant possessed the drug knowingly. Because the dilemma of opposite findings with respect to the defendant's state of mind does not exist in this case,

3. We come finally to the most difficult question in this appeal, the defendant's contention that the prosecution's evidence did not warrant a finding that the defendant knew the package contained cocaine. If the defendant is correct, his motion for a directed verdict, filed at the close of the prosecution's case, should have been allowed because knowing and intentional possession must be proved to establish a violation of G. L. c. 94C, § 32, for possession of a controlled substance with intent to distribute.[7]

Proof of a defendant's state of mind may be established indirectly by inferences. *Commonwealth* v. *Ellis,* 356 Mass. 574, 578-579 (1970) (inference of intent to sell a harmful drug warranted by quantity possessed). *Commonwealth* v. *Kelley,* 333 Mass. 191, 193-195 (1955) (inference of knowledge that goods received were stolen established by possession subject to defendant's burden of explanation). If an inference is warranted by the evidence, the jury must determine whether the inference establishes the fact inferred beyond a reasonable doubt, and, if it does, the fact inferred is proved as if established directly by testimony. *Commonwealth* v. *Nelson, ante,* 192, 200-201 (1976), and cases cited. Conjecture and surmise are not sufficient to support a verdict of guilty. The issue in cases of this nature is whether the jury were warranted in inferring that the defendant's knowledge had been proved beyond a reasonable doubt. The test must be made on the prosecution's evidence exclusively because the motion for a directed verdict with which we are involved here was filed at the close of the Commonwealth's case. See *Commonwealth* v. *Kelley, ante,* 147, 149-150 (1976).

The defendant argues that the evidence did not warrant an inference that he knew that cocaine was in the pack-

we need not decide whether a conviction would be affirmed in such a circumstance.

[7] In *Commonwealth* v. *Lee,* 331 Mass. 166 (1954), the defendant received by mail a package containing marihuana cigarettes. Although she had not opened the package, her conviction for being found in the possession of a narcotic drug was affirmed. However, that case is not instructive here because the court held that knowledge was not an essential element of the crime charged.

age. He suggests that the evidence shows only that he signed for a package sent by someone he did not know to someone he did not know, addressed care of "Agar"; he opened the package sufficiently to discover an enclosed note; he read the note and thereby discovered the package was not for him; and he surrendered the package voluntarily when he assumed, correctly, that the sudden interest of law enforcement officers in him must have been prompted by his possession of the misdirected package which he had just received. In short, the suggestion is that what happened to him could happen to anyone who receives a misdirected package through the mail.

The argument advanced by the Commonwealth is that an inference of knowledge plainly was warranted on the evidence. The defendant responded when the postman said he had a package for Roper, and he signed for it even though he did not know Roper; next he opened the package and read the enclosed note; the package in fact contained cocaine having a retail value of over $57,000; he then left his apartment, leaving the package behind in a closet; and when, after being stopped by the police, he returned to the area of his apartment, immediately he brought up the subject of the package. The package had not been mentioned before, although controlled substances had been mentioned. The defendant offered to turn it over to the police. He then went to a closet, picked up the package, and handed it to a State police officer.

We think that the inference of knowledge of the possession of the cocaine was warranted beyond a reasonable doubt in these circumstances. In the absence of other evidence, possession of an unopened package, containing drugs, addressed to another and received through the mail moments before his arrest, would not warrant an inference beyond a reasonable doubt that a defendant possessed the drugs knowingly. See, e.g., *Schaufele* v. *State*, 269 So. 2d 400, 401 (Ct. App. Fla. 1972); *People* v. *Ackerman*, 2 Ill. App. 3d 903, 905-906 (1971) (package addressed to another unknown person c/o the defendant); *People* v. *Patello*, 41 App. Div. 2d 954 (N.Y. 1973), distinguishing

*People* v. *Reisman,* 29 N.Y.2d 278 (1971), discussed *infra.*
Compare *Ramsey* v. *People,* 179 Colo. 172, 174-176 (1972)
(picking up air freight package for a friend), with *People*
v. *Bennett,* 183 Colo. 125, 132-133 (1973) (picking up air
freight package addressed to another and producing false
identification to show he was the addressee). An inference
of knowledge of possession of a harmful drug may be war-
ranted, in all the circumstances, if a package received by
mail is held for a significant period of time, even unopened;
if the package has been opened; if it has been put away
(such, as here, in a closet);[8] or if it has not been returned
with reasonable promptness to the postal authorities as
having been misdirected. Here the package addressed to
"Roper" was received and opened by the defendant, and a
note read. The defendant then put the package away.
These facts support an inference that the defendant knew
that someone named "Roper" was not the intended recip-
ient. A statement by the accused concerning the package,
such as "if it's about the package, I will give it to you,"
adds to the reasonableness of the inference of knowledge.
See *Weber* v. *Superior Court,* 30 Cal. App. 3d 810, 815
(1973) (on service of a warrant the defendant said spon-
taneously, "Is it because of the packages?").

Although these individual facts collectively tend to sup-
port the inference of knowledge, there is more. We believe
that the inference was warranted from these facts in con-
junction with a commonsense understanding of the entire
situation. One engaged in illegal drug traffic does not send
cocaine worth thousands of dollars to a person selected
at random. One can infer reasonably that recipients are
chosen with intended care and are a knowing part of the
distribution process. The jury could use their common
sense knowledge that $57,600 worth of cocaine would not
be sent "c/o Agar" to the defendant's address without the
defendant's having some advance knowledge that he might
be receiving a controlled substance.

---

[8] *State* v. *Doerge,* 11 Ore. App. 602, 606 (1972). *State* v. *Godwin,*
13 N.C. App. 700, 701 (1972).

The Court of Appeals of New York has concluded that "[g]enerally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises ... [citations omitted]. This, of course, is an elemental inference based on common experience and all but universal probabilities." *People* v. *Reisman*, 29 N.Y.2d 278, 285 (1971). That inference of knowledge is "subject, of course, to rebuttal by countervailing proof." *Id.* at 287. The New York court thought this reasoning to be particularly applicable to dangerous drugs (at 286) and cited with approval (at 286-287) the similar views of the Supreme Court of Illinois in *People* v. *Nettles*, 23 Ill. 2d 306, 308-309 (1961), cert. denied, 369 U.S. 853 (1962), which are set forth in the margin.[9] Cf. *People* v. *Superior Court*, 27 Cal. App. 3d 404, 411-412 (1972).[10] On

---

[9] "The underlying principle of ... [two prior] cases is that where narcotics are found on premises under defendant's control, it may be inferred that the defendant had both knowledge and control of the narcotics. This inference is based largely upon the nature of the commodity and the manner in which its illegal traffic is conducted. By law the use of narcotics, except for specified medicinal purposes, is rigidly condemned. Because of this illegitimate nature of narcotics, they are sold for exorbitant sums on the black market and are therefore of great value to the person possessing them. Furthermore, since their mere possession may subject such person to severe criminal consequences, the narcotics traffic is conducted with the utmost secrecy and care. Human experience teaches that narcotics are rarely, if ever, found unaccountably in a person's living quarters.

"We are of the opinion, therefore, that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury, or of the court where a jury is waived, a reasonable doubt as to his guilt."

[10] In *People* v. *Superior Court*, the court upheld the validity of a search warrant based on a magistrate's permissible inference that a person who was the consignee of marihuana, found in a search of foreign mail, might have other contraband at his residence. That case dealt with a balancing of probabilities and not with proof beyond a reasonable doubt. However, the court accepted the inference of knowledge of the consignee as a reasonable and permissible basis for the further inference that other drugs might be found in his possession. The court said (at 411-412), "A reasonable and prudent magistrate

this state of the evidence, the defendant's motion for a directed verdict was properly denied.

*Judgment affirmed.*

---

could infer that the consignee of contraband mailed from outside the United States would know that he was party to an illegal transaction and that, branded with such knowledge, it is reasonable to infer that the consignee possesses other contraband of foreign or domestic origin. The argument that like junk mail, four-pound packages of marijuana are shipped from overseas at random to innocent consignees who have neither solicited nor been a knowledgeable party to the shipment or receipt of such goods should be rejected as unworthy of consideration."