**Tom Martin BARBER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–87–570–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 11, 1988.

Bob Tarrant, Houston, for appellant.

John B. Holmes, Jr., Cathleen Herasim-chuk, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

CANNON, Justice.

Appellant was indicted for the felony offense of possession with intent to use and sell a counterfeit driver's license. The trial court rejected his not guilty plea, and after finding the enhancement paragraph true, assessed punishment at three years confinement. Appellant challenges the sufficiency of the evidence to sustain his conviction, and contends the trial court erred in permitting the introduction of the "penitentiary packet" showing his prior felony conviction. We affirm.

On March 28, 1987, Gene Hawkins, a criminal investigator for the Texas Department of Public Safety, went to the Retrieve Unit of the Texas Department of Corrections to investigate some counterfeit driver's licenses that TDC officials had intercepted in the outgoing mail. Hawkins was shown a package containing thirty-three counterfeit temporary driver's licenses, a sheet of instructions on how to ship contraband into the prison system, and four United Parcel Service shipping stickers. All of these items were hidden inside a hollowed-out wooden picture frame.

The instruction sheet was dated March 21, addressed to "Ol' Buddy," and signed

by "Us." It indicated that the sender had "taken the liberty of sending you 25 tdl's along with some other stuff and info on what we would like to get done." The letter went on to say that "Us" wanted the licenses sold, and the money used to purchase heroin, to be packaged and sent to "Us" via United Parcel Service, according to the instructions included in the package. A special order from "His Shortness" for "1 oz. from your garden" was also included. The letter requested an immediate reply from "Ol' Buddy." A second enclosure began with the salutation, "Tom hay how are you?" and contains further instructions on mailing contraband into the prison system.

After examining the package and its contents, Hawkins contacted Postal Service personnel in Houston, and set up a controlled delivery of the package to its intended recipient at 3626 Deal Street in Houston. The package was re-wrapped and processed by the Postal Service. Hawkins also obtained a search warrant for the Deal Street address.

On March 31, 1987, Hawkins, accompanied by other DPS officers and Postal Service personnel, watched as the package was delivered to appellant, who took it inside the house. Subsequently, Hawkins executed the search warrant. Appellant was the only person in the house. The package, still wrapped, was found lying on the floor next to the dining room table. On the table was a greeting card, dated March 31, 1987, containing the following message:

> Hey, Just a note to let you know that I've tracked down the lost goods. All is "in hand" now. It seems like my mailman just got a little lazy ... an didn't want to carry 'round a package ... *and* he forgot to leave a notice on my door. You know it is ... good help is so hard to find. But I think I got this trip straightened out ... his boss did chew on his ass about doing his job.—Please tell ol' Ego–Plus (Mulcey) [spelling unclear] that a M.O. in the mail

Appellant was arrested, and the package containing the counterfeit driver's licenses was seized.

In his first and second points of error, appellant contends that the trial court erred in denying his motion for instructed verdict and motion for new trial based upon insufficient evidence. Specifically, appellant claims that the evidence is insufficient to prove that: (1) he knowingly possessed the counterfeit driver's licenses; (2) he possessed them with the intent to use or sell them; and (3) the licenses were actually counterfeit.

In reviewing the sufficiency of the evidence in a criminal case, the critical inquiry is whether, after examining the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986). This standard of review is the same for both direct and circumstantial evidence. *Carlsen v. State,* 654 S.W.2d 444, 449 (Tex. Crim.App.1983) (opinion on State's motion for rehearing). When the evidence is circumstantial, the reviewing court must determine whether the evidence excludes every reasonable hypothesis except the appellant's guilt. Proof which amounts to only a strong suspicion or a mere probability is insufficient. Every circumstantial evidence case must be tested on its own facts to determine the sufficiency of the evidence to support the conviction. *Johnson v. State,* 673 S.W.2d 190, 195 (Tex.Crim.App.1984).

Appellant was charged with intentionally and knowingly possessing with intent to use and sell a counterfeit driver's license. It was the State's burden to prove not simply possession, but also knowledge of the counterfeit licenses and the intent to use or sell them. Tex.Rev.Civ.Stat.Ann. art. 6687b, § 44A(a) (Vernon Supp.1988); *Ex parte Holbrook,* 606 S.W.2d 925, 926 (Tex.Crim.App.1980).

■ Both appellant and the State make a useful analogy between the present case and situations involving possession of drugs and other contraband. In an unlawful possession of controlled substance case, the State must prove: (1) that the accused

exercised care, control and management over the contraband and (2) that the accused knew the matter possessed was contraband. *Christian v. State*, 686 S.W.2d 930, 932 (Tex.Crim.App.1985). Because appellant was the sole occupant of the residence at 3626 Deal Street when he received the package, he clearly exercised control over it. The only issue is whether he knew what the package contained.

■ Knowledge of and possession of contraband may be inferred from other facts and circumstances, such as exclusive possession of the place where the contraband was found. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App. [Panel Op.] 1981). However, in the absence of other evidence, possession of an unopened package, received by mail or common carrier, and containing drugs, does not warrant an inference beyond a reasonable doubt that the accused knowingly possessed drugs. *Powell v. State*, 660 S.W.2d 842, 844 (Tex. App.—El Paso 1983, no pet.); *see also Fewell v. State*, 687 S.W.2d 807, 810 (Tex. App.—Houston [14th Dist.] 1985, no pet.); *Commonwealth v. Sheline*, 391 Mass. 279, 461 N.E.2d 1197, 1202 (1984); *Commonwealth v. Aguiar*, 370 Mass. 490, 350 N.E. 2d 436, 442–43 (1976); *State v. Richards*, 155 N.J.Super. 106, 382 A.2d 407, 411 (1978). Other evidence showing knowledge of the contents of a package includes actions such as claiming boxes addressed to the accused and known by Customs agents to contain drugs, informing a U.P.S. driver that a package is expected, and holding a package for a significant period of time or hiding it in the house to which it was delivered.

■ The present case contains such evidence. Appellant lived at 3626 Deal Street and was in sole possession of the house at the time the package mailed to that address was delivered. Appellant accepted the package when it was delivered. The package was found on the floor next to the dining room table. One page of the instructions contained in the package was addressed to "Tom," the appellant's first name.

Appellant contends that the letter enclosed with the counterfeit licenses makes it obvious that he did not know what was being sent to him. That letter instructed appellant to write back and inform the sender if he agrees or disagrees with the proposed scheme. However, the note written on the greeting card on the dining room table states that, "I've tracked down the lost goods," and goes on to state that the writer had complained to the Postal Service about an expected package that had not been delivered. This evidence supports the inference that appellant had been awaiting the package for some time, and had received information concerning the package and its contents subsequent to the writing of the letter contained in the package. Because the package had been intercepted by Department of Corrections authorities, it was delayed in its delivery to appellant's house. The greeting card was dated March 31, 1987, the same day the package was delivered, and contained a similar salutation ("Hey") as the letters enclosed in the package. Therefore, it was reasonable to infer that because appellant knew what the package contained, he did not open it immediately, but began writing back to the sender to inform him of the delivery.

■ Appellant also contends that the evidence is insufficient to prove that he intended to use or sell the licenses. The intent to sell may be inferred from the possession of a large quantity of illegal items. *Pitts v. State*, 731 S.W.2d 687, 692 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). There is no other reasonable explanation for appellant's possession of thirty-three temporary driver's licenses than for their use or sale.

■ Finally, appellant argues that the evidence is insufficient to prove that the licenses were, in fact, counterfeit, because the State failed to prove that no one in authority at TDC authorized the manufacture of the licenses. This contention is without merit.

Billy Don Cox, a Department of Public Safety state trooper assigned to the driver's license service, testified that the licenses were not authentic Texas Department of

Public Safety licenses. Trooper Cox based his conclusion on the fact that the licenses did not have perforated edges, all had the same receipt number, and were not printed with the same quality as authentic driver's licenses. He emphasized that no one is authorized to counterfeit Texas driver's licenses. As the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given their testimony, the trial judge was entitled to believe Trooper Cox's testimony that no one was authorized to print the thirty-three licenses, and that they were in fact counterfeit. *Penegraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim. App. [Panel Op.] 1981).

After reviewing the evidence in the light most favorable to the verdict, we conclude that the trial judge, as trier of fact, could have found the essential elements of the offense beyond a reasonable doubt. Appellant's first and second points of error are overruled.

In his third and fourth points of error, appellant contends that the trial court erred in admitting appellant's "pen packet" into evidence because it was not properly authenticated as a judicial record, and therefore could not support the court's finding of a prior conviction.

■ A penitentiary packet, containing the record of a criminal defendant's prior convictions, is self-proving and admissible under TEX.R.CRIM.EVID. 901(b)(7), 902(2), (4), and 1005. A sponsoring witness is not needed where the proper attestation and certificate are attached to the judgment and sentence relating to the prior conviction. *Yeager v. State*, 737 S.W.2d 948, 950 (Tex.App.—Fort Worth 1987, no pet.) (opinion on remand).

■ Appellant's pen packet bears the seal of the Walker County Court, an attestation by the Texas Department of Corrections Record Clerk that the documents contained in the pen packet are certified copies of the originals, and the signatures of the Record Clerk, the County Clerk and the Presiding Judge of the Walker County Court. We hold that this is sufficient authentication under either TEX.R.CRIM.EVID. 901(b)(7) or 902(1) or (4). *See Mullins v.*

*State*, 699 S.W.2d 346, 350 (Tex.App.—Corpus Christi 1985, no pet.); *Gutierrez v. State*, 745 S.W.2d 529, 530 (Tex.App. Corpus Christi 1988, pet. ref'd).

As part of his argument that the pen packet was not properly admitted, appellant claimed that it did not comply with 28 U.S.C. § 1739, which requires states to give full faith and credit to nonjudicial records kept in any public office of any other state, if the records are properly authenticated. However, appellant's pen packet contains a certificate of attestation that meets the requirements of 28 U.S.C. § 1739. Therefore, it was properly authenticated under both the United States Code and the Texas Rules of Evidence.

■ The pen packet contained appellant's photograph and fingerprints. At the punishment phase of the trial, the State's fingerprint expert testified that the fingerprints in the pen packet were identical to known prints of appellant. *See Beck v. State*, 719 S.W.2d 205, 209 (Tex.Crim.App. 1986). Because the pen packet was properly authenticated, it was admissible to prove both the fact of appellant's prior conviction and his identity as the person previously convicted. Appellant's third and fourth points of error are overruled.

The trial court's judgment is affirmed.

SEARS, Justice, dissenting.

I respectfully dissent. The state has proved nothing more than the fact that the package of counterfeit driver's licenses was delivered to the home of the appellant. There is no evidence that proves beyond a reasonable doubt that the Appellant even knew what was inside the package. Also, even if the state could prove knowledge of the contents, there is no evidence that even remotely proves that the Appellant possessed "with the intent to use *and* sell." The state has not even proved an intent to use *or* sell the counterfeit licenses.

The state, and the majority opinion, relies on the note on the greeting card as "proof beyond a reasonable doubt" that the Appellant not only knew what was in the package, but, intended *to* use *and* sell the con-

tents of the unopened package. First of all, although the note bears a date of March 31, 1987, there is no evidence of the date or, more importantly, the *time* the note was written. There is not even any proof of who wrote the note.

The majority *assumes* that the Appellant wrote the note in question. However, the state failed to put on a handwriting expert to prove this assumption. The majority *assumes* the note was written *after* delivery of the package and *before* the execution of the search warrant. However, the state failed to establish time of delivery in order to prove this assumption. The majority *assumes* Appellant knew what was in the package, and thereby must also *assume* the Appellant had prior contact with the inmates who mailed the package and was thereby advised of its contents; however, there is no evidence upon which this assumption can be proven. The majority next *assumes* the Appellant intended to use *and* sell the fake goods and places one assumption carefully on top of another to build the transparent conclusion of guilt.

The all incriminating note could just have easily been written in regard to some other package containing lawful goods as opposed to contraband. *There is no evidence that directly connects this note to this package.* Also, there is no evidence to show the Appellant "tracked down the lost goods" as indicated in the note. There is no evidence the "mailman got lazy," "forgot to leave a notice," or, that Appellant had his boss "chew on his ass." There is nothing in the note that shows knowledge of the contents of the package. The shippers of the package are not identified, but the notes inside the package make reference to: "His Shortness"; "His Bigness"; and "The Oldness;" and is signed, "Us." However, the note allegedly written by the Appellant makes reference only to "Ego Plus (Murkey)."

The majority cannot *assume* that the note has anything at all to do with the package delivered in the total absence of evidence to support such speculation. The majority cites *Powell v. State*, 660 S.W.2d 842 (Tex.App.—El Paso 1983); however,

they totally ignore the holding in that case. Where Powell received a sealed package, and the state failed to connect him with the contents or the shipper, the El Paso court reversed the conviction and ordered acquittal.

In summation, there is no evidence in the record from which any reasonable trier of fact can find the Appellant guilty beyond a reasonable doubt. I would reverse and render a judgment of acquittal.