Connolly, J.
On June 25, 1993, a Suffolk County Grand Jury returned indictments against the defendant, Troy Footman, for rape under G.L.c. 265, §22(b) and assault and battery under G.L.c. 165, §13A. A hearing on defendant’s motions to suppress was held before this court on November 24, 1993. As grounds for these motions the defendant claims that statements made to a Boston police officer on June 4, 1993 were made without a knowing and voluntary waiver of his right to remain silent. In addition defendant claims that the items seized from his car should be suppressed, because they were taken pursuant to a war-rantless search. Finally, defendant also argues that the out-of-court identification made from a photo array, as well as the in-court identification made at South Boston District Court, should be suppressed because both identification procedures were unduly suggestive. For the reasons discussed below, all three of defendant’s motions to suppress are denied.
BACKGROUND
The facts that follow are taken from the testimony of witnesses who appeared before this court at the suppression hearing held on November 24, 1993.
During the early morning hours of June 2, 1993, the alleged victim in this matter, Susan Wardynski, was walking home from Whitey’s Place, a bar located near the Broadway MBTA Station. Prior to going to the bar, Ms. Wardynski had consumed 8 beers. While in Whitey’s Place, she drank another beer. Upon leaving Whitey’s Place, as Ms. Wardynski began to walk towards her mother’s house, someone called out her name. She turned and saw a black male, and asked who was calling her. The male responded that he was a friend of “J.R.’s”; J.R. had been a friend of Ms. Wardynski’s for quite a few years. Ms. Wardynski walked over to the car, stood in front of this person and spoke to him approximately 15 minutes. The street lights were on. The man then allegedly grabbed Ms. Wardynski by the neck and forced her into his car, where the alleged rape took place. She was then pushed out of the car. As she left the car Ms. Wardynski glanced at the license plate and noticed that the car was maroon. Once out of the car, Ms. Wardynski saw and spoke to several family members, and then called the Boston Police Department.
Ms. Wardynski then went to the New England Medical Center Hospital. At approximately 5:30 a.m., on June 2, 1993, Ms. Wardynski spoke with Sergeant Marie *628 Donoghue of the Boston Police Department’s Sexual Assault Unit. Sergeant Donoghue did not observe Ms. Wardynski to be intoxicated. At that time, Ms. Wardynski provided Sergeant Donoghue with a description of an unknown black male, approximately 5’10" tall, of medium weight, wearing a pony tail. Ms. Wardynski also stated that the car the incident occurred was maroon, fairly new, and that she had lost an earring in it.
At approximately 1:30 p.m., that same day, Sergeant Donoghue took a book of photographs of black male- sexual assault suspects to Ms. Wardynski’s home. After looking at 23 photographs, Ms. Wardynski selected the defendant’s photograph, #1303.
A warrant for the defendant’s arrest was issued by the South Boston District Court on June 3, 1993. The defendant was arrested by the MBTA police on June 4, 1993. After the defendant had been advised of his Miranda rights and the booking procedure had been completed, the defendant was taken to the holding cell by Detective Paul Walsh, who again advised the defendant of his Miranda rights. Sergeant Donoghue was also present. The defendant said that he wanted to make a statement about the case to Sergeant Donoghue. The defendant stated that he was dating Ms. Wardynski and that she had consented to having sex with him. In the course of this conversation, defendant also consented to the search of his vehicle, which was being held at Area C-6 in South Boston. Sergeant Donoghue and Detective Walsh searched the 1985 Grey Cadillac Seville. As a result of their search, a white jacket with some personal papers and a beeper were seized. No earring was found inside the car.
DISCUSSION
A.Defendant’s Statements
The defendant does not dispute that he was adequately advised of his Miranda rights under Miranda v. Arizona, 384 U.S. 436 (1966). Rather, defendant argues that the statements he made to Sergeant Donoghue on June 4, 1993 were not voluntarily given, and that he did not intentionally and voluntarily waive his right to remain silent.
The Commonwealth has the burden of establishing beyond a reasonable doubt the validity of a defendant’s Miranda waiver and the voluntariness of the defendant’s statements. Commonwealth v. Day, 387 Mass. 915, 920-21 (1983). “Voluntariness turns on the ‘totality of circumstances,’ including promises or other inducements, conduct of the defendant, the defendant’s age, education, intelligence and emotional stability, experience with the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings." Commonwealth v. Mandile, 397 Mass. 410, 413 (1986).
In the present case, the Commonwealth presented evidence that the defendant was advised of his Miranda warnings twice, and that the defendant then spontaneously declared that he wanted to make a statement to Sergeant Donoghue. The defendant offered no evidence that he was particularly susceptible to police pressure, that he was mentally impaired or intoxicated, or that he lacked the necessary education to understand his Miranda rights. See Commonwealth v. Tavares, 385 Mass. 140, 145-46 (1982). Nor was there any indication that youth, emotional instability or coercion affected the defendant’s decision to make a statement to police. After being advised of his Miranda rights, the defendant said that he wanted to make a statement about the case to Sergeant Donoghue. In light of the totality of the circumstances, as presented at the suppression hearing, this court finds that the Commonwealth has met its burden of showing that the defendant voluntarily and intelligently waived his Miranda rights, and voluntarily decided to make statements to the police on June 4, 1993.
B.Items Seized
The defendant argues that the personal papers and the beeper seized from his car by police should be suppressed because they were taken pursuant to a warrantless search which was unreasonable. War-rantless searches are unreasonable unless they fall into one of the narrowly drawn exceptions to the warrant requirements of the Fourth Amendment of the United States Constitution and Article Fourteen of the Massachusetts Declaration Rights. One of these exceptions to the warrant requirement is when consent has been given for the search.
In the present matter, the defendant does not dispute that he gave his consent to the search of the car. Whether the defendant’s consent to the search was voluntary is a question of fact to be determined by the circumstances of each case, with the burden of proof on the Commonwealth. Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976). The Commonwealth must show that the defendant’s consent to the search of the car was “unfettered by coercion, express or implied, and was also something, more than mere acquiescence to a claim of lawful authority.” Commonwealth v. Voisine, 414 Mass. 772, 783 (1993). “The fact that the defendant was under arrest at the time he gave his consent to the search may suggest that his consent was not voluntary, but this fact is not by itself decisive, and can be overridden by other circumstances ... The defendant need not be advised of his right to insist on a warrant, for his consent to be voluntary.” Aguiar, supra, at 497 (citations omitted). The facts presented at the suppression hearing in this matter establish that after the defendant intelligently and knowingly waived his Miranda rights and gave a statement to Sergeant Donoghue, that he freely and voluntarily consented to the search of his car. The search was thus reasonable.
C.The Identification
The defendant seeks to suppress both the photographic array and the South Boston District Court *629 identifications arguing that both identification procedures were unnecessarily suggestive, in violation of his rights to due process. A defendant moving to suppress pre-trial identifications has the burden of showing, by a preponderance of the evidence, in light of the totality of circumstances, that the identifying witness was subjected by the Commonwealth to an identification procedure so unnecessarily suggestive, and conducive to irreparable misidentification, as to deny the defendant due process of the law. Commonwealth v. Holland, 410 Mass. 248, 253 (1991). The crucial question is whether any possible mistake is due to improper procedures on the part of the Commonwealth. Commonwealth v. Colon-Cruz, 408 Mass. 533, 541 (1990).
In the present case, the defendant has not met this burden. At the suppression hearing, the defendant presented no evidence of unnecessarily suggestive practices by the police during the photo array identification or by the Commonwealth during the South Boston District Court identification. In fact, the only evidence presented relevant to the identification of the defendant was that Ms. Wardynski spoke to her attacker face-to-face under a street light for approximately 15 minutes, that she provided a description to Sergeant Donoghue hours after the alleged incident, that Ms. Wardynski did not appear intoxicated when she gave the description and that she selected the defendant’s photograph after considering 23 other photographs. In light of the totality of circumstances, this court finds that the defendant has not met his burden of showing unnecessary suggestiveness and a violation of his right to due process.
ORDER
For the foregoing reasons it is hereby ORDERED that the defendant's motions to suppress (1) statements made to the Boston Police Department on June 4, 1993, (2) items seized from the automobile, (3) and the photographic and in-court identifications are DENIED.