**Robert Dale HALLMARK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–89–00454–CR.**

Court of Appeals of Texas,
Dallas.

April 10, 1990.

John G. Tatum, Dallas, for appellant.

Robert P. Abbott, Dallas, for appellee.

Before STEWART, BURNETT, and WHITTINGTON, JJ.

## OPINION

BURNETT, Justice.

Robert Dale Hallmark was convicted of the offense of unlawful possession of a controlled substance, amphetamine. The trial court assessed punishment, enhanced by two prior convictions, at forty years' confinement. In three points of error, appellant contends that (1) the trial court erred in overruling his motion to suppress the evidence of the amphetamine seized from him because the arresting officers did not have probable cause to arrest him for public intoxication; (2) the evidence is insufficient to show an uninterrupted chain of custody of the amphetamine; and (3) the trial court erred in admitting a pen packet. We overrule appellant's points of error and affirm the judgment of the trial court.

On October 31, 1988, Dallas Police Officers Melvin Cosby and Billy Moshier were on patrol in east Dallas. Around 3:20 p.m., the officers pulled into the parking lot of the Economy Inn. Officer Cosby testified that the Economy Inn is located near the intersection of two major thoroughfares, Ferguson Road and R.L. Thornton Freeway. Officer Cosby testified that he noticed appellant "staggering around the parking lot as if he were intoxicated." Officer Cosby also said that appellant was walking among the parked cars in the parking lot, and that it appeared appellant was looking for a car to get into.

Officers Cosby and Moshier got out of their car and approached appellant. Officer Cosby testified that appellant was "extremely incoherent," and stuttered when he spoke. Officer Cosby checked appellant's arms and found fresh needle marks and blood coming out of the marks. The officers then placed appellant under arrest for public intoxication. Officer Cosby also testified that at the time they arrested appellant, he believed appellant was a danger to himself and others. Officer Cosby said appellant was endangering himself by staggering around a parking lot which is frequently traveled and in close proximity to a busy intersection. After the officers arrested appellant, Officer Cosby searched appellant and found a plastic bag in a pocket of his pants. The bag contained a powdery substance which was later identified as amphetamine.

■ In his first point of error, appellant contends that the trial court erred in overruling his motion to suppress the evidence of the amphetamine because the officers did not have probable cause to arrest appellant for public intoxication. An individual commits the offense of public intoxication "if the individual appears in a public place under the influence of alcohol or any other substance, to the degree that the individual may endanger himself or another." TEX. PENAL CODE ANN. § 42.08(a) (Vernon 1989).

The officers arrested appellant for public intoxication without an arrest warrant. A police officer may make a warrantless arrest if, at the time of the arrest, the facts and circumstances within the officer's knowledge and of which the officer had reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Britton v. State,* 578 S.W.2d 685, 689 (Tex.Crim.App. 1978) (opinion on reh'g), *cert. denied,* 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). Thus, the proof to establish probable cause for an arrest without a warrant differs from the proof required for a judicial determination of guilt.

Appellant cites *Berg v. State,* 720 S.W.2d 199 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd), to support his contention that there was not probable cause to arrest him. In *Berg,* police officers arrested a man inside the lobby at Houston Intercontinental Airport for "investigation of public intoxication." Police searched the man and found a small amount of cocaine in one of his socks. The only evidence supporting

the arrest was that the man was observed having two drinks, "appeared unbalanced in his stance," smelled of alcohol, and was "thick tongued." The court of appeals held that there was no evidence in the record to indicate that the man was a danger to himself or others. *Berg,* 720 S.W.2d at 201.

In the case before us, Officer Cosby provided ample testimony about the facts and circumstances warranting his belief regarding the danger appellant presented to himself. Officer Cosby testified that appellant was "staggering" and was "extremely incoherent." Officer Cosby stated that there was a danger to appellant from moving cars in the parking lot. Also, it is reasonable to assume that cars from the nearby, busy intersection presented a danger to appellant. Thus, *Berg* is distinguishable from the case before us. We conclude that the evidence supports the trial court's finding of probable cause to arrest appellant. *See Balli v. State,* 530 S.W.2d 123, 125–26 (Tex.Crim.App.1975), *overruled on other grounds, Chudleigh v. State,* 540 S.W.2d 314, 319 (Tex.Crim.App.1976); *Traylor v. State,* 642 S.W.2d 250, 251 (Tex.App.—Houston [14th Dist.] 1982, no pet.). We overrule appellant's first point of error.

■ In his second point of error, appellant contends that the evidence is insufficient to show that there was an uninterrupted chain of custody of the amphetamine. Appellant contends that because Officer Cosby did not identify the bag of amphetamine at trial, there was no link between appellant and the amphetamine.

Officer Cosby testified that, after arresting appellant around 3:20 p.m., he took appellant and the bag of amphetamine to

the Northeast Division police substation. Officer Cosby testified that because his shift was over and he was going off duty, he transferred appellant and the bag of amphetamine to the custody of Dallas Police Officer Robert Nelson at the police substation.[1] Officer Nelson testified that Officer Cosby transferred appellant and the bag of amphetamine to him at the Northeast Division substation around 3:30 p.m. Officer Nelson testified that he then drove appellant and the bag of amphetamine to Lew Sterrett Justice Center, the downtown Dallas jail. Officer Nelson testified that he sealed the amphetamine in an evidence bag and labeled it at the jail.

Officer Nelson testified that he was not present when Officers Cosby and Moshier arrested appellant and found the bag of amphetamine in his pocket. Officer Nelson further testified that he had no personal knowledge as to whether Officers Cosby and Moshier altered the bag of amphetamine during the drive from the scene of the arrest to the Northeast Division substation.

The bag of amphetamine was introduced at trial as part of State's Exhibit number one. Officer Nelson identified State's Exhibit number one as containing the bag of amphetamine given to him by Officer Cosby. Officer Cosby never identified the bag of amphetamine in State's Exhibit number one as the bag that he seized from appellant. Appellant contends that because Officer Cosby did not identify State's Exhibit number one as containing the amphetamine, there was insufficient evidence to show a proper chain of custody of the amphetamine.

---

1. Officer Cosby's complete testimony concerning the transfer of appellant and the bag of amphetamine to Officer Nelson is as follows:

   STATE: Once you retrieved this substance, what did you and Officer Moshier do?
   OFFICER COSBY: [Appellant] was already under arrest so we just placed him in the car and went to the Northeast patrol division.
   STATE: Okay. Now did you personally take [appellant] to jail (Lew Sterrett Justice Center)?
   OFFICER COSBY: We took him to the Northeast Division. It was late in the after-

noon by the time we had finished our arrest. It was our shift change time so we took him to the Northeast Substation where a clerk on the evening shift, an officer would take him to jail.
   STATE: Okay. And did you turn the substance over to that officer also?
   OFFICER COSBY: Yes, I did.
   STATE: All right. Would that be Officer Nelson ... ?
   OFFICER COSBY: Yes, that's right.

In drug prosecutions, proving a proper chain of custody has particular significance because the nature of the prosecution is keyed to the analysis of the substance obtained from a defendant. Appellant argues that *Jones v. State*, 538 S.W.2d 113 (Tex. Crim.App.1976), supports his position that Officer Cosby's failure to identify State's Exhibit number one as the amphetamine he found appellant possessing renders the exhibit inadmissible. In *Jones*, a police officer saw a man throw a balloon out of a car window. The officer seized the balloon and found in it a substance later determined to be heroin. The officer placed his initials on the balloon.' The officer then took the man to the police station and delivered the balloon to a police chemist. At trial, the chemist identified the balloon as the one delivered by the officer. The chemist also identified the substance in the balloon as heroin. The exhibit was never shown to or identified by the officer. The Court of Criminal Appeals stated:

> [T]he fact that the chemist identified the balloon as one delivered to him by the officer is not legally sufficient to show that the balloon was the one the officer seized after he saw appellant throw it from a car. In short, there was no showing that State's Exhibit No. 1 (a plastic bag containing the balloon) was in any manner connected to the appellant, and therefore the proof is insufficient to show that appellant possessed heroin on the date charged.

*Jones*, 538 S.W.2d at 114.

■ A proper chain of custody is not destroyed merely because the evidence is not identified at trial by the police officer initially recovering the evidence. *See King v. State*, 710 S.W.2d 110 (Tex.App.—Houston [14th Dist.] 1986), *cert. denied*, 484 U.S. 829, 108 S.Ct. 99, 98 L.Ed.2d 59 (1987). In *King*, one officer removed a packet of cocaine from the defendant's pocket. The officer immediately handed the packet to a second officer who had observed the first officer seize the cocaine. The second officer placed his initials on the packet of cocaine and transported it to a chemist. At trial, the second officer identified an exhibit as the packet of cocaine removed from the defendant's pocket. *King*, 710 S.W.2d at 113.

In the case before us, Officer Nelson did not view the arrest of appellant or the seizure of the amphetamine. There was, however, a connection between the bag of amphetamine and appellant. Immediately after arresting appellant, Officer Cosby took appellant and the bag of amphetamine to the Northeast Division substation. Soon after arriving at the police substation, Officer Cosby transferred both appellant and the bag of amphetamine to Officer Nelson. Officer Nelson transported appellant and the bag of amphetamine to Lew Sterrett Justice Center. Officer Nelson then initialled the bag of amphetamine. He also identified the bag of amphetamine at trial. Thus, under these facts, we hold that the bag of amphetamine in State's exhibit number one was sufficiently connected to appellant and there was no break in the chain of custody. Accordingly, we overrule appellant's second point of error.

■ In his third point of error, appellant contends that the trial court erred in admitting State's Exhibit number three, a pen packet, because the evidence is insufficient to show that appellant was the same person that was named in the judgments and sentences contained in the pen packet. The pen packet contained judgments and sentences of five previous convictions of appellant. The pen packet also contained a fingerprint card, which listed only two crimes, "BURG VEH (1)" and "POSS C/S(1) (2–3 yrs)."

The two crimes listed on the fingerprint card apparently refer to appellant's conviction for burglary of a vehicle, cause number F85–92457–NU, and appellant's conviction for unlawful possession of a controlled substance, cause number F86–83292–QU.[2] The pen packet also contained judgments and sentences of three other convictions[3]

---

2. Appellant's conviction in cause number F86–83292 was alleged in the indictment for enhancement purposes and found true by the trial court.

3. All three of these convictions were for burglary of a building. The cause numbers were F80–1461–KJ, F80–1462–KJ, and F79–6679–HJ.

besides the convictions for burglary of a vehicle and unlawful possession of a controlled substance. Appellant argues that because each and every conviction was not specifically listed on the fingerprint card, the entire pen packet is inadmissible.

Deputy Max Chester of the Dallas County Sheriff's Department, a fingerprint expert, testified that the fingerprints contained in the pen packet matched a set which he had taken from appellant on the day of the trial. The fingerprint card in the pen packet refers to the pen packet as a whole. *Cole v. State*, 484 S.W.2d 779, 784 (Tex.Crim.App.1972); *Sanders v. State*, 695 S.W.2d 646, 648 (Tex.App.—Dallas 1985, no pet.). Also, the certification page included in the pen packet listed the cause numbers of all five convictions. The evidence was sufficient to show appellant was the person named in all the judgments and sentences in the pen packet. We overrule appellant's third point of error.

We affirm the judgment of the trial court.