COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-418-CR

MURRELL RAY BRIDGES APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 415TH DISTRICT COURT OF PARKER COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Murrell Ray Bridges complains in one issue that the trial court erred by refusing to grant his motion to dismiss Enhancement Paragraph One of the indictment because the conviction alleged in Enhancement Paragraph One was insufficiently connected to Bridges.  We affirm.

II.  Factual and Procedural Background

On November 19, 2004, Bridges was indicted for the offense of driving while intoxicated (“DWI”).  The trial court granted the State’s motion for leave to amend the indictment, which resulted in Bridges’s range of punishment being raised to that of a habitual offender.  Bridges pleaded guilty to the charged offense and further stipulated that he was the person convicted in two prior DWI convictions alleged by the State for jurisdictional purposes.  Having opted to have a jury assess punishment, Bridges proceeded to the punishment phase of trial.

The amended indictment alleged previous convictions for DWI from the counties of Palo Pinto, Parker, and Runnels, evidence of which was subsequently presented at trial, and contained two enhancement paragraphs:  Enhancement Paragraph One alleged that on January 30, 2001, Bridges had been convicted of felony DWI in Cause No. 0792234W in the 297th District Court of Tarrant County, and Enhancement Paragraph Two alleged two separate offenses — that on August 18, 1995, Bridges had been convicted of violations of the Certificate of Title Act in Cause Nos. 10,107 and 10,106 in the 29th Judicial District Court of Palo Pinto County. 

III.  The Trial

A.  Enhancement Paragraph One

During the trial, the State asked Detective Turnbow regarding Enhancement Paragraph One if she had had an opportunity to compare the known fingerprints of Bridges, contained in State’s Exhibit 16, to fingerprints contained in a certified Texas Department of Criminal Justice (“TDCJ”) pen packet marked as State’s Exhibit 14.  Detective Turnbow stated that she had compared the known fingerprints of Bridges to the fingerprint card contained in State’s Exhibit 14 and that both sets of fingerprints were from the same person, Bridges.  The State then offered State’s Exhibit 14 into evidence, and the trial court admitted it without objection.

State’s Exhibit 14 consisted of eight pages and contained the following items:  (1) a certification page/affidavit from TDCJ; (2) side and frontal photographs of Bridges along with his name and TDCJ Identification Number; (3) a December 7, 2001 judgment in Cause No. 11,654 from the 29th Judicial District Court of Palo Pinto County, Texas, in which Bridges was convicted of felony DWI with a six-year sentence imposed in the Texas Department of Criminal Justice-Institutional Division (“TDCJ-ID”) and including a fingerprint identification; (4) a judgment in Cause No. 0792334W from the 297th Judicial District Court of Tarrant County, Texas, in which Bridges was convicted of DWI and Felony Repetition with a sentence of three years in the TDCJ-ID; and (5) a fingerprint card containing the name, date of birth, physical descriptors, and the TDCJ Identification Number of Bridges.

B.  Enhancement Paragraph Two

The State asked Detective Turnbow regarding Enhancement Paragraph Two if she had had the opportunity to compare the known prints of Bridges, contained in State’s Exhibit 16, to the fingerprints contained in a certified TDCJ pen packet marked as State’s Exhibit 14.  Detective Turnbow testified that the fingerprints contained in the judgments and fingerprint card in the TDCJ pen packet comprising State’s Exhibit 13 were those of Bridges.  Thereafter, the trial court admitted State’s Exhibit 13 into evidence without objection.

State’s Exhibit 13 consisted of eight pages containing the following items: (1) a certification page from TDCJ; (2) side and frontal photographs of Bridges along with his name and TDCJ Identification Number; (3) a judgment from Cause No. 10,107 from the 29th Judicial District Court of Palo Pinto County, Texas, in which Bridges was convicted of violations of the Certificate of Title Act; (4) a judgment from Cause No. 10,106 from the 29th Judicial District Court of Palo Pinto County, Texas, in which Bridges was convicted of violations of the Certificate of Title Act; (5) a judgment revoking probation from Cause No. 9458 from the 29th Judicial District Court of Palo Pinto County, Texas, in which Bridges’s community supervision was revoked and he was sentenced to prison for the offense of felony DWI; and (6) a fingerprint card containing Bridges’s name, date of birth, physical descriptors, TDCJ Identification Number, and fingerprints.

C.
  
Motion to Dismiss and Defense Testimony

At the conclusion of the State’s case-in-chief on punishment, Bridges made a motion to dismiss Enhancement Paragraph One.
(footnote: 2)  The Court denied the request.  Bridges then put on his witnesses.  On cross-examination, several of Bridges’s witnesses also testified about Bridges’s prior convictions listed in Enhancement Paragraph One and Enhancement Paragraph Two.  Barbara Upton, Bridges’s older sister, testified as to Bridges’s prior prison trips.  In her testimony, Upton acknowledged that Bridges had been to prison on two occasions and that one of the prison trips was for both Tarrant County and Palo Pinto County DWI offenses.
(footnote: 3)  Ellis Bridges, Bridges’s older brother, testified that he knew Bridges had been to prison on two different occasions.
(footnote: 4)  Bridges’s daughter, Nacole Willis, acknowledged that she was aware that Bridges had been to prison on two occasions.
(footnote: 5)
 On cross-examination, Upton was able to affirmatively identify the handwriting on two other certified judgments as being that of Bridges: (1) State’s Exhibit 17, containing a judgment from Cause No. 34,981 from the County Court of Palo Pinto County, Texas, in which Bridges was convicted of misdemeanor DWI; and (2) State’s Exhibit 18, containing a judgment from Cause No. 24,041 from the County Court of Palo Pinto County, Texas, in which Bridges was again convicted of misdemeanor DWI.  The  trial court admitted the documents into evidence without objection.

The jury found both enhancement paragraphs true and assessed punishment at 99 years’ confinement.  This appeal follows.

IV. Standard of Review, Analysis, and Application

A.  Standard of Review

Bridges’s motion to dismiss was in essence a request for an instructed verdict as to Enhancement Paragraph One, in that he requested that the judge not submit it to the jury.  
A challenge to the denial of a motion for instructed verdict is actually a challenge to the legal sufficiency of the evidence.  
Canales v. State
, 98 S.W.3d 690, 693 (Tex. Crim. App.), 
cert. denied
, 540 U.S. 1051 (2003); 
McCown v. State
, 192 S.W.3d 158, 160 (Tex. App.—Fort Worth 2006, pet. ref’d).
  
In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the judgment in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

B.  Analysis

The State had the burden to prove, beyond a reasonable doubt, its enhancement paragraph as alleged in the charging instrument.  
See Williams v. State
, 980 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1998, pet. ref’d).  While 
no required method of proof is set out by statute,
 a judgment and sentence may suffice, or their functional equivalent.  
See Mitchell v. State
, 848 S.W.2d 917, 918-19 (Tex. App.—Texarkana 1993, pet. ref’d) (finding that an abstract of judgment was the functional equivalent of a judgment and sentence).  

A prior conviction can be proven by the introduction of the “pen packet,” which is the file from the penitentiary where the defendant was an inmate and which contains the record of the inmate’s prior conviction.  
Cuddy v. State
, 107 S.W.3d 92, 96 (Tex. App.—Texarkana 2003, no pet.); 
Barber v. State
, 757 S.W.2d 83, 87 (Tex. App.—Houston [14th Dist.] 1988, pet. ref’d).  Under the analysis set forth in 
Beck v. State
, 719 S.W.2d 205, 209-10 (Tex. Crim. App. 1986), a pen packet must not only prove the existence of a conviction but also link that conviction to the defendant.  The 
Beck
 court reasoned, 

We have consistently held that a prior conviction alleged for enhancement or a conviction as a part of prior criminal record of a defendant under Article 37.07, V.A.C.C.P., may be established by certified copies of a judgment and a sentence and authenticated copies of the Texas Department of Corrections records including fingerprints, supported by expert testimony identifying them as identical with known prints of the defendant.

. . . . 

These documents [certified copies of a judgment and sentence and the authenticated records of the Texas Department of Corrections or other penal institutions] while admissible, are not normally sufficient standing alone to prove the prior convictions, and this is true even if the name on the judgment and sentence and in the pen packet is the same as the defendant in trial.  It is incumbent on the State to go forward and show by independent evidence that the defendant is the person so previously convicted.

Id.
 at 209-10 (citations omitted).

The Texas Court of Criminal Appeals has approved several different means by which it may be proven that a defendant is the person previously convicted in another case that is sought to be admitted by the State during trial.  They include the following:

(1) Testimony of a witness who personally knows the defendant and the fact of his prior conviction and identifies him; (2) Stipulation or judicial admission of the defendant that he has been so convicted; (3) Introduction of certified copies of the judgment and sentence and record of the Texas Department of Corrections or a county jail
 including 
fingerprints of the accused supported by expert testimony identifying them with known prints of the defendant; and (4) Comparison by the fact finder of a record of conviction which contains photographs and a detailed physical description of the named person, with the appearance of the defendant, present in court.

Daniel v. State
, 585 S.W.2d 688, 690-91 (Tex. Crim. App. 1979) (citations omitted) (emphasis supplied).

The above list is not exclusive as to prior convictions used for enhancement or prior criminal history.  
Human v. State
, 749 S.W.2d 832, 835 (Tex. Crim. App. 1988); 
Littles v. State
, 726 S.W.2d 26, 32 (Tex. Crim. App. 1984) (op. on reh’g); 
Rosales v. State
, 867 S.W.2d 70, 72 (Tex. App.—El Paso 1993, no pet.).  Rather, each case is to be judged on its own individual merits in determining whether the proof of identity is sufficient.  As long as the proof of identity is sufficient, even if proven by an unorthodox method, no error will be found on appeal.
  Littles
, 726 S.W.2d at 32.

Photographs made available to the jury for comparison with the accused can provide the independent evidence necessary to prove the accused was previously convicted as alleged.  
Williams v. State
, 946 S.W.2d 886, 895 (Tex. App.—Waco 1997, no pet.).  Identification information such as name, sex, height, eye color, hair color, and date of birth can also suffice as independent evidence tending to prove identity.  
Id
.

Authentication of handwriting may be established by a comparison performed either by experts or by the jury.  
Tex. Code Crim. Proc. Ann.
 art. 38.27 (Vernon 2005).  Proof by comparison to other writing samples is sufficient when an appellant fails to contest under oath the authenticity of either his handwriting when the document is unsigned or of his signature when the document is signed. 
 Camacho v. State, 
765 S.W.2d 431, 434 (Tex. Crim. App. 1989); 
Ex Parte Watson,
 606 S.W.2d 902, 905 (Tex. Crim. App. 1980).  However, comparison by the jury of the accused’s signature with that of the defendant found in the records of conviction is insufficient to permit admission of the evidence in the absence of any other evidence to connect the defendant to the prior conviction.  
Rosales
, 867 S.W.2d at 73 (citing 
Smith v. State
, 489 S.W.2d 920, 921-22 (Tex. Crim. App. 1973)).

C.  Application

The State first contends that Bridges waived his right to complain of the court’s failure to dismiss Enhancement Paragraph One, asserting that the complaint is as to a defect in the indictment, citing article 1.14(b) of the code of criminal procedure, 
Tex. Code Crim. Proc. Ann.
 art. 1.14(b) (Vernon 2005)
, 
and 
Jones v. State
, 907 S.W.2d 850, 857 (Tex. App.—Houston [1st Dist.] 1995, pet. ref’d).  The State’s argument is misplaced.  Bridges is not asserting that defect existed in the indictment, but rather that was an evidentiary failure by the State to prove that the Murrell Ray Bridges at trial was the Murrell Ray Bridges convicted in Tarrant County.  This is clearly distinguishable from the 
Jones
 case, wherein Jones argued that the enhancement paragraph of the indictment alleged that he committed one offense but was convicted of a second, unidentified offense.  We reject the State’s argument in this regard.  Further, 
challenges to the legal sufficiency of the evidence need not be raised in the trial court to be preserved for appellate review.  
Moff v. State, 
131 S.W.3d 485, 488-89 (Tex. Crim. App. 2004).

The State argues that the following evidence and resulting legal analysis is sufficient to link the Murrell Ray Bridges at trial to the Murrell Ray Bridges convicted in the 297th District Court in Tarrant County:  

(1) Detective Turnbow testified that the known fingerprints of Bridges contained in State’s Exhibit 16 were identical to the fingerprint card contained in the TDCJ pen packet, State’s Exhibit 14;

(2) The fingerprint card indicates Bridges was committed to prison for three years for DWI, which matches the conviction alleged in Enhancement Paragraph One and the judgment contained in the pen packet;

(3) The certification page of State’s Exhibit 14 (a) lists Bridges’s TDCJ number as 1083310, which is the same number on the fingerprint card, and (b) states that the pen packet reflects conviction in cause numbers 0792334W (the Enhancement Paragraph One allegation) and 11654 (a jurisdictional conviction stipulated by Bridges);

(4) Case law reflects that matching an accused’s fingerprints to a set of fingerprints within a pen packet is sufficient to support multiple convictions in the pen packet because the fingerprints refer to the packet as a whole, citing 
Cole v. State
, 484 S.W.2d 779, 784 (Tex. Crim. App. 1972), 
Petrick v. State
, 832 S.W.2d 767, 773 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d), 
Hallmark v. State
, 789 S.W.2d 647, 650-51 (Tex. App.—Dallas 1990, pet. ref’d), and 
Sanders
 
v. State
, 695 S.W.2d 646, 648 (Tex. App.—Dallas 1985, no pet.);

(5) Bridges stipulated to the fact that prior to the allegation of the DWI offense for which he was on trial in this cause, he had previously been convicted in the 29th District Court of Palo Pinto County, cause number 11654, for DWI, which is the same conviction contained in the pen packet that also contains the conviction in the 297th District Court;

(6) State’s Exhibit 14 contains a frontal and side photograph of Bridges, which the jury could have compared to Bridges at trial and to photographs related to the Palo Pinto conviction in the pen packet;

(7) State’s Exhibit 6 contained a detailed physical description that the jury could compare to the physical description in State’s Exhibit 14; and

(8) Bridges’s own witnesses testified about his prior convictions and to at least two prison stays.

Examination of the case law regarding a single set of fingerprints in a pen packet containing multiple convictions supports the State’s contention in that regard.  For example, in 
Cole
, 

[a]n examination of the packet indicate[d] that it consists of certified copies of records of the Texas Department of Corrections pertaining to one Johnny Lerl Cole, including the judgment and sentence in five separate convictions and one set of fingerprints.  An expert witness testified that the fingerprints contained in the packet matched a set which he had taken from appellant on the same day.  The fingerprints are used as a means of insuring that the person on trial is the same one to whom the packet refers.  The fingerprints refer to the packet as a whole.  This method of proof has been consistently upheld by this Court.  

Cole
, 484 S.W.2d at 784.

Next, appellant contends that the fingerprint cards contained in the pen packets listed no cause numbers or vital statistics to link them to appellant.  However, a single set of fingerprints within a pen packet is sufficient to support multiple convictions reflected in the pen packet, because the fingerprints refer to the packet as a whole. 

Petrick
, 832 S.W.2d at 773.

Appellant argues that because each and every conviction was not specifically listed on the fingerprint card, the entire pen packet is inadmissible.  Deputy Max Chester of the Dallas County Sheriff’s Department, a fingerprint expert, testified that the fingerprints contained in the pen packet matched a set which he had taken from appellant on the day of the trial.  The fingerprint card in the pen packet refers to the pen packet as a whole.  Also, the certification page included in the pen packet listed the cause numbers of all five convictions.  The evidence was sufficient to show appellant was the person named in all the judgments and sentences in the pen packet. 

Hallmark
, 789 S.W.2d at 651 (citations omitted).

An examination of the packet reveals it consists of certified copies of records of the Texas Department of Corrections pertaining to one Anthony Dwight Sanders.  It includes conviction records in two causes and one set of fingerprints.  An expert witness for the State testified that the fingerprints in the packet matched a set which he had personally taken from the appellant.  The fingerprints in the packet refer to the packet as a whole and the method of proof used has been consistently upheld by the Court of Criminal Appeals.  We hold that the evidence was sufficient to show appellant was the person convicted of theft as alleged in the first enhancement paragraph.

Sanders,
 695 S.W.2d at 648 (citation omitted).

Reviewing the foregoing evidence under the appropriate standard of review and applying the law recounted herein regarding one set of fingerprints contained in a pen packet concerning multiple convictions, we hold that the trial court did not err by refusing to dismiss Enhancement Paragraph One.

V.  Conclusion

Having overruled Bridges’s sole issue, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: MCCOY, LIVINGSTON, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: September 13, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
Specifically, Bridges’s counsel stated,

Your honor, at this time I’d like to make a motion again for this Court to dismiss an enhancement paragraph in this cause, and it would be Enhancement One using the prior felony conviction alleged out of Tarrant County on the 30th day of January, 2001, out of the 297th District Court.  I believe that the evidence on that alleged prior felony fails to meet any kind of burden to establish that, indeed, it’s -- the Murrell Ray Bridges that was sent to prison back then was, indeed, this Murrell Ray Bridges.

3:
Q. . . . [H]ow many DWIs does he have, to your understanding?

. . . .

A. . . . I’ve heard three.

. . . .

Q. . . .[D]o you know how many times he’s been to prison?

A.  Twice.

Q. . . . And was one of those for a deal both in Tarrant County for DWI and in Palo Pinto County for DWI?

A.  That’s what I understand.

4:
Q. . . . [A]s you sit there right now, can you tell this jury how many DWIs your baby brother has?

. . . .

Q. Do you have an understanding as to how many it is?

. . . .

A. Six, seven.  I don’t know.  I really don’t.

Q. . . . Do you have an understanding as to how many times your brother [has] been to prison?

. . . .

Q. How many times is that?

A.  Twice.

5:
Q.  How many times has your father been to prison?

A.  Twice.

Q.  Were you living with him when he went to prison?

A.  Yes.